CHARLES LYONS, Receiver of MIDDLETON BANK OF WAVERLY, v. NATIONAL SURETY COMPANY, Appellant.

Division Two, June 1, 1912.

1. **BILL OF EXCEPTIONS: Record Recital of Time of Filing: In Vacation or Term Time.** Neither the statute nor the rules of the court require that the record proper show whether the filing of the bill of exceptions was in term or in vacation. If it shows that the bill was filed and made a part of the record within the time allowed by the court, that is sufficient.

2. ———: **Recital of Fact of Filing in Narrative Form.** It is not necessary that the abstract of the record proper set out the record entry concerning the filing of the bill of exceptions *in haec verba,* or that an abridgment thereof be set out; but a

recital of the fact of its filing, in narrative form, is sufficient. That rule applies not only to the abstract of entries concerning the filing of the petition or other pleading, but it applies to an order of court or the filing of a motion or a bill of ·exceptions.

3. ————: **Amended Petitions.** Although the abstract of the record contains the original petition and the first amended petition, yet as they were abandoned by the filing of a second amended petition upon which the cause was tried, they cannot be considered on appeal, unless introduced in evidence at the trial and made a part of the bill of exceptions, just as any other matter of exception.

4. **SURETY BOND: Discovery of Loss During its Life: Fraudulent Concealment.** Where the bond obligated the surety company to make good any loss of money of the bank's cashier during the term of the bond, between November 15, 1902, and November 14, 1903, "which losses shall be discovered during said term or within six months thereafter," and the bank did not discover the loss until January, 1906, the bank cannot recover in its suit on the bond. Fraudulent concealment by the defaulting cashier of his speculations and dishonesty and the prevention by him of a discovery of them by the other bank officers, by the use of ordinary diligence, during the term of the bond and for six months thereafter, will not extenuate á failure of the bank to discover the loss, nor extend the term.

5. ————: ————: ————: **Limitations.** Concealment of fraud will toll the Statute of Limitations in certain cases, but a suit on a bond obligating a surety company to pay the losses of an embezzling cashier if discovered during the term of the bond or within six months thereafter, is not such a·case. The bond put the duty on the bank to discover the loss, not on the surety company. Nor is this provision of the bond to be held to be an attempt to circumvent the statute; if the discovery had been made within the time fixed by the bond, the bank would have the full statutory time in which to sue. The bond does not attempt to limit the time for bringing an action which has already accrued; but the question is, did a cause of action ever accrue? Before a cause of action accrued two things were necessary: first, a loss by the bank; and, second, a discovery of the loss by the bank within the time prescribed by the bond. And there ·was no such discovery, and the Statute of Limitations has no application to the case.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

REVERSED.

*Frank Hagerman* and *Kimbrough Stone* for appellant.

(1) Courts will interpret, not make, contracts for the parties. Indem. Co. v. Mining Co., 154 Fed. 554; Mining Co. v. Ins. Co., 126 Mo. App. 104; Grocer Co. v. Canning Co., 129 Mo. App. 325; Diederick v. Rose, 228 Ill. 610. (2) Failure to make discovery of alleged loss, to give notice thereof, to make claim therefor or proof thereof, according to the requirements of the bond. (a) Construction of bond and diligence in discovering loss. No room for construction where bond is unambiguous. Assn. v. Obert, 169 Mo. 515; Finkbohmer v. Ins. Co., 6 Cal. App. 379; Cas. Co. v. Wade, 101 Tex. 102. Means of information is equivalent to having the information. Wood v. Carpenter, 101 U. S. 135; Truett v. Onderdonk, 120 Cal. 581. (b) Statute of Limitations. Discovery of loss clause. Am. Sur. Co. v. Pauly, 170 U. S. 133; Guarantee Co. v. Bank, 183 U. S. 401. Not a suit for fraud but upon contract. R. S. 1909, sec. 1888; Martin v. Knapp, 45 Mo. 48; State ex rel. v. Hawkins, 103 Mo. App. 251; McMullen v. Assn., 56 L. R. A. 924. (c) Importance of statements in application for bond. Brokerage Co. v. Fidelity Co., 44 So. (La.) 449. (3) False statements in application for bond. Willoughby v. Fidelity Co., 16 Okla. 546; Indem. Co. v. Mfg. Co., 95 Fed. 111; Hunt v. Fidelity Co., 99 Fed. 242.

*Alexander Graves* and *Horace F. Blackwell* for respondent.

(1) (a) There is no bill of exceptions before the court for each of several good reasons, *infra,* as shown by the abstract. Abstract, page 43: "And thereafter, upon the 22d day of December, 1910, and within the time allowed by said orders and stipulations for the filing of said bill of exceptions, the same was duly

presented to said judge and by him signed, approved, ordered filed and made a part of record and was filed and made part of said record." This does not show whether it was done in term or vacation. Clay v. Pub. Co., 200 Mo. 672; Johnson v. Hodges, 65 Mo. 589; Bick v. Williams, 181 Mo. 527; Harding v. Bedoll, 202 Mo. 632. On this point no presumption indulged. Harding v. Bedoll, 202 Mo. 632; Reno v. Fitz Jarrel, 163 Mo. 413; Kolokas v. Railroad, 223 Mo. 461. (b) It does not purport to be an abstract of any record entry whatever. Stark v. Zehnder, 204 Mo. 449; Hill v. County, 195 Mo. 514; Ricketts v. Hart, 150 Mo. 68. (c) The matter in the abstract just preceding signature of circuit judge is of no value on this point. Williams v. Harris, 110 Mo. App. 540; Railroad v. Wyatt, 223 Mo. 352; Hill v. County, 195 Mo. 514; Stark v. Zehnder, 204 Mo. 449. (d) On page 348 of the abstract the words "Filed December 22, 1910. J. W. Sydnor, Clerk Circuit and ex-officio clerk Criminal Court," if genuine, have no effect whatever. Williams v. Harris, 110 Mo. App. 540; Johnson v. Hodges, 65 Mo. 589; Malloy v. Clark, 130 Mo. 211. (e) Besides, the clerk's affidavit is on file in this court denying that he wrote or authorized said words to be placed there. (f) There is a break in the alleged extensions of time for filing bill of exceptions in the abstract. This abstract contains an unusual mixture of record proper and of matter of exception, whereby "the court is put to picking and choosing, to sorting out exceptions from record entries and record proper—guess where it is to be found and authenticated, and run a hazard of guessing wrong." Kolokas v. Railroad, 223 Mo. 461; Storage Co. v. Glasner, 150 Mo. 426. (2) The abstract of record proper is fatally defective. The record entry of the filing of bill records: "And thereafter, upon the 22d day of December, 1910, and within the time allowed by said order and stipulation for the filing of said bill of exceptions, the same was duly presented

to said judge and by him signed, approved, ordered filed and made a part of record and was filed and made a part of said record.'' On this point we respectfully refer to what has been shown under point one, supra. (b) There is nothing to show by proper abstract the ruling on motions. On page 35 of his abstract, appellant presents the following as the entire abstract of the record of the order of the court overruling said motions for new trial and in arrest of judgment: ''Whereupon, said motions being overruled by the court and. defendant having excepted to each of said rulings, defendant upon the same date and during said term of court filed its affidavit for appeal to the Supreme Court of Missouri, which (omitting caption), was as follows: (See abstract, page 35.)'' First. It does not purport to be a record entry. It asserts nothing concerning a court order. It is a phrase. It more especially concerns appellant's exceptions and its appeal from the judgment below. Stark v. Zehnder, 204 Mo. 449; Harding v. Bedoll, 202 Mo. 632. Second. It mingles matters of exception with matters of record. Kolokas v. Railroad, 223 Mo. 461; Owens v. Matthews, 226 Mo. 77; Hayes v. Foos, 223 Mo. 423. (c) On page 34 appears to be alleged abstract of another record entry as follows: ''Whereupon, upon the same day and during the same term of said court, the defendant filed its motion for new trial and its motion in arrest of judgment. Said motions were, omitting caption and signatures, as follows: (Abstract, page 34.)'' It does not hint of any record of court order allowing same to be filed. It is a mere vague statement of counsel, not hinting at any entry on the record of the court. Harding v. Bedoll, 202 Mo. 130; Barnes v. Barnes, 149 Mo. App. 549. Along with this alleged record entry are found copies of said motions, contrary to the oft repeated rule of this court. Kolokas v. Railroad, 223 Mo. 461; Stark v. Zehnder, 204 Mo. 449; Hayes v. Foos, 223 Mo. 423; Phillips v. Jones, 176 Mo. 329. (3) Al-

leged abstract of the record concerning pleadings; original petition, first amended petition and demurrer to second amended petition. (a) There is absolutely nothing of a proper abstract of record to show either filing of this demurrer, its disposition by the court, or, if overruled, any exceptions. (b) The original and the first amended petition are "abandoned pleadings," and constitute no part of the record of the case. Ingwerson v. Railroad, 205 Mo. 335; Bailey v. O'Bannon, 28 Mo. App. 46; 3 Cyc. 1060, note 93; Aydelott v. Collins, 43 N. E. 867; Huntington v. Folk, 54 N. E. 759; City v. Opel, 67 Mo. 394. (4) Exhibits filed with pleadings have never been held by this court as part of the "record proper." Kern v. Ins. Co., 40 Mo. 25; Peake v. Bell, 65 Mo. 224; Phillips v. Jones, 176 Mo. 329; Chamber's v. Carthel, 35 Mo. 375; Matney v. Gregg, 19 Mo. App. 111; State ex rel. v. Crumb, 157 Mo. 561; Price v. Ins. Co., 58 Mo. App. 556; Hubbard v. Slavens, 218 Mo. 622; Majors v. Maxwell, 120 Mo. App. 285; Hanks v. Hanks, 218 Mo. 678. (5) (a) Second amended petition. Absolutely nothing identifies the matter printed on page 17 of the abstract, as a pleading upon which the case was tried. Nothing shows it was filed in the case. There is no hint of a record showing it was filed in any case in any court. The following appears on page 17 as an alleged abstract of record as an entirety: "That thereafter, upon the 5th day of August, 1907, plaintiff filed his second amended petition which was (omitting caption, signatures and copy of bond which was same as Exhibit A to the preceding petitions) as follows:" This is entirely futile as an abstract of record proper. No hint of a record nor of a court. Barnes v. Barnes, 149 Mo. App. 549; Harding v. Bedoll, 202 Mo. 630; Hill v. County, 195 Mo. 514. (b) On page 18 of the so-called abstract of record it will be seen by inspection that a most material allegation is omitted from the record of the second amended petition. Appellant expects the court to con-

jecture what is meant by "(Here follows Bond.)" Certainly this court cannot conjecture. Reno v. Fitz Jarrel, 163 Mo. 413. It might hazard a guess and guess wrong. Kolokas v. Railroad, 223 Mo. 461. (c) Besides that part of page 18 "(Here follows Bond)" destroys entire matter as an abstract proper of the record. Barnes v. Barnes, 149 Mo. App. 549. (6) Plaintiff was entitled to judgment below for the simple reason (if for no other) that the abstract of record utterly fails to show any record entry whatever that any answer was filed in the court below. There is on page 23 the following: "That thereafter defendant filed its general demurrer to said petition which being overruled, defendant upon the 12th day of August, 1907, filed its answer which was (omitting caption and signatures), as follows: (Abstract, 23.)" We submit that this constitutes no abstract of the record of any court of any case. Barnes v. Barnes, 149 Mo. App. 549; Harding v. Bedoll, 202 Mo. 630; Walser v. Wear, 128 Mo. 653. (7) Appellant cannot now amend this abstract. Harding v. Bedoll, 202 Mo. 630; Everett v. Butler, 192 Mo. 569.

KENNISH, J.—This is an appeal from a judgment of the circuit court of Lafayette county, in an action by Charles Lyons, receiver of the Middleton Bank of Waverly, Missouri, plaintiff, against the National Surety Company, defendant, to recover the penalty of a bond for ten thousand dollars, made by the defendant to said Middleton Bank, guaranteeing the fidelity of E. H. Lewis, cashier of said bank. By agreement of the parties a jury was waived, and at the April term, 1907, the cause was tried to the court. The trial resulted in a finding and judgment in favor of the plaintiff for ten thousand dollars, and from such judgment the defendant appealed to this court.

Plaintiff's second amended petition, upon which the cause was tried, alleges: That on the 25th day of

November, 1902, the defendant, by its bond of that date, executed and delivered to said Middleton Bank, undertook and agreed to make good and reimburse to the said bank any pecuniary loss of money, security or other personal property belonging to said bank, not exceeding the sum of ten thousand dollars, that might be sustained by said bank by reason of the fraud or dishonesty of E. H. Lewis, cashier of said bank, in connection with the duties pertaining to the position of cashier, occurring during a term beginning on the 15th day of November, 1902, and ending on the 14th day of November, 1903.

The petition further alleges that there have been breaches of said bond, in that said Lewis, at the times, in the amounts and by the means specifically set out in the petition, fraudulently and dishonestly converted to his own use the sum of $22,867.50, belonging to said bank. All of the acts of embezzlement counted on in the petition are alleged to have occurred in the months of August and October, 1903. The petition also alleges that neither the Middleton Bank nor its officers, before the appointment of the receiver, had notice or knowledge that there had been a loss under said bond, and that the receiver did not learn of the existence of the bond and that the bank had sustained losses that were covered by the bond, until the month of January, 1906; that on February 1, 1906, the receiver gave the defendant written notice of the loss and of his claims for reimbursement. The prayer of the petition is for judgment for the full penalty of the bond.

The answer pleads six separate defenses, as follows: (1) A general denial; (2) that the bond expressly provides that the defendant shall be liable only for such losses as shall be discovered during the term of the bond or within six months thereafter; that it is also provided by the bond that notice of loss shall be given to the defendant immediately upon discovery and during the term of the bond or within six months there-

after; that the alleged losses were not discovered, nor was notice thereof given to the defendant, within the time so provided for discovery and notice; (3) false representations made by the president of the bank in the written application for the bond; (4) failure of the bank to comply with the terms of the bond as to making frequent audits and examinations of Lewis's accounts; (5) failure to notify the defendant, as required by the bond, that Lewis gambled and was dishonest and unworthy of confidence, after knowledge of such facts came to the officers of the bank; (6) that suit was not instituted within one year after making claim of loss, as required by the conditions of the bond.

The reply is a general denial.

The evidence introduced at the trial is voluminous, and we shall refer to only such parts of it as are essential to a proper understanding of the legal questions presented.

The plaintiff introduced in evidence the bond upon which the action is based. The paragraph containing the obligation and risk assumed by the defendant is as follows:

"Now therefore, for and in consideration of the sum of twenty-five dollars, and in further consideration of the statements made by the employer to the company and of the covenants on the part of the employer hereinafter contained, the company hereby undertakes and agrees to and with the employer that it will, subject to the provisions and conditions herein contained, which shall be conditions precedent to the right of the employer to recover hereunder, at the expiration of three months next after proof satisfactory to the company of any loss for which the company may be liable hereunder shall have been furnished to the company at its principal office in the City of New York, make good and reimburse to the employer such pecuniary loss of money, securities or other personal property belonging to the employer, or in the employer's

possession and for which the employer is legally liable, not exceeding the sum of ten thousand dollars, as may be sustained by the employer by reason of the fraud or dishonesty of the employee in connection with the duties pertaining to the office or position to which the employee has been appointed, and occurring during the term beginning on the fifteenth day of November, A. D. 1902, and ending on the fourteenth day of November, A. D. 1903, both days inclusive, which loss shall be discovered during said term or within six months thereafter and within six months after the determination of this obligation.''

Other evidence introduced by the plaintiff tended to show the following facts:

E. H. Lewis was cashier of the Middleton Bank from 1899 until the bank failed in 1905. The Secretary of State took charge of the bank on May 2, 1905. On the day following, plaintiff was appointed receiver and three days later qualified as receiver and took possession of the effects of the bank. Shortly after he was appointed receiver plaintiff made a demand upon the president of the bank for the bonds of the cashier and assistant cashier. The president gave him the bond of the assistant, but did not deliver to him any of the bonds given by Lewis as cashier, because he did not know where any of them were. In November or December, 1905, the receiver found the bond in suit among some papers belonging to the bank and that had come into his possession when he took charge of the assets of the bank as receiver. In the latter part of January, 1906, he had an accountant make an examination of the books of the bank, and from such examination learned that the losses involved in this suit had occurred during the period covered by the bond. He promptly notified the defendant of the losses and of his claim for indemnity.

During the period covered by the bond Lewis embezzled from the bank the sum of $22,867.50, by means

of seven drafts, five of them drawn on the Mechanics' National Bank of St. Louis, and two of them drawn on the Union National Bank of Kansas City, with which banks the Middleton Bank had exchange accounts. All of the drafts were signed by Lewis as cashier and were paid by the banks on which they were drawn. The money paid on them was by Lewis converted to his own use. He never accounted for the money thus obtained and the Middleton Bank lost the entire amount. Up to the time of the failure of the bank, Lewis bore a good reputation and the officers and directors of the bank had never suspected that he was dishonest.

The evidence for the defendant tended to show that the application for the bond, which was signed by the president of the bank, stated that Lewis was not indebted to the bank, while the books of the bank showed that he owed the bank more than three thousand dollars when the application for the bond was made; that the application, which was dated November 10, 1902, also stated that Lewis's accounts had been audited and examined on October 10, 1902, when in fact no such audit or examination had been made; that an examination of the books on October 10, 1902, would have disclosed Lewis's indebtedness to the bank; that it was a well known fact in the little town of Waverly that Lewis, while cashier of the bank, speculated heavily in a bucket shop; that from the time the bond was issued in 1902 until the bank failed in 1905 no examination of Lewis's accounts was made by the bank, and that by such an examination made at any time after October, 1903, the losses in controversy would have been discovered.

At the close of plaintiff's evidence, and again at the close of all the evidence, the defendant asked an instruction in the nature of a demurrer to the evidence. Both instructions were refused and defendant saved an exception to the refusal of each.

The trial court made a finding of facts to the effect that by the fraud and dishonesty of Lewis in appropriating to his own use the money of the bank, he was a defaulter in the sum of $22,867.50, and that by reason thereof the Middleton Bank had wholly lost said sum; that Lewis concealed his said thefts and that the bank, before the appointment of the receiver, had no notice or knowledge of the same, and could not have had such notice or knowledge by the exercise of ordinary care and diligence; that the receiver did not discover that the bond was in existence until January, 1906, and did not discover that a loss had been sustained under said bond until February 1, 1906, and immediately upon such discovery gave written notice of the loss to the defendant; that such notice was received by the defendant, and that upon the receipt of the notice the defendant expressly denied liability on account of said loss; that the Middleton Bank, the board of directors thereof and the receiver had performed all of the conditions required by the bond to be by them performed; that accordingly the court found the issues for the plaintiff and against the defendant.

Pursuant to this finding judgment was rendered in favor of the plaintiff for the sum of ten thousand dollars.

I.   Although respondent appeared in this court by brief and oral argument, he has not briefed or discussed the alleged errors urged by appellant for a reversal of the judgment. On the contrary he has devoted his whole efforts to the support of a motion to dismiss or affirm for alleged defects in appellant's printed abstract of the record.   The questions thus raised by respondent demand first consideration, for if they are well founded they put an end to the case, at least in this court.

II.   It is urged that "the so-called abstract of the record proper fails to show whether the bill of excep-

tions was filed in term time or vacation; or by whom filed; or in what case, and does not purport to be an abstract of any record entry."

In order to understand the attack thus made, it should be prefaced that the abstract of the record proper sets out *in extenso*, with proper words of identification, the pleadings in the case, the judgment, the affidavit for appeal, the order granting the appeal and allowing time to file the bill of exceptions, and also stipulations of counsel and orders of court extending such time until the bill was filed within the time so extended. The following then appears, namely:

"And thereafter, upon the 22nd day of December, 1910, and within the time allowed by said orders and stipulations for the filing of said bill of exceptions, the same was duly presented to said judge and by him signed, approved, ordered filed and made a part of the record and was filed and made a part of said record."

Is the foregoing recital sufficient? It is said by respondent that it fails to show whether the bill was filed in term time or in vacation. The law then in force provided that the bill might be filed "at the time or during the term, or within such time thereafter as the court may by an order entered of record allow, which time may be extended," etc. The record shows that time was allowed after the term to file the bill and was extended from time to time, and it is recited that the bill was filed and made a part of the record within the time so allowed. It is not required either by the statute or the rules of this court, that the record show whether the filing was in term or in vacation and we are unable to see why that fact must necessarily appear in order to give validity to the bill.

We have not overlooked what was said by this court in the case of Clay v. Union Wholesale Pub. Co., 200 Mo. l. c. 672, 673, cited by respondent upon this point. While language is used in that case to the effect that it should appear in the abstract whether the bill

was filed during the term or in vacation, it is shown by the statement of facts that the record contained no recital whatever as to the bill of exceptions, except in the certificate of the judge authenticating the bill. There is therefore no parallel between the facts of that case and the case at bar, and it is unnecessary to do more than to refer to the principal of law that a case can become a precedent only in so far as it decides issues before the court for adjudication.

The objections that it does not appear in the record by whom the bill was filed or in what case it was filed are so technical and lacking in substance as not to require consideration.

There is more merit in the objection that the recital does not purport to be an abstract of any record entry. It raises this question as to appellate procedure, viz.: If the subject-matter of the printed abstract of the record proper is as to some order of court or the filing of some motion or paper in the case, and not a pleading involved in the appeal, is it necessary that the record entry or an abridgment thereof be set out, or is a recital of the fact itself, in narrative form, a compliance with the rule? If the latter is sufficient, then the recital in this case must be upheld; otherwise, it cannot be. The fact should not be overlooked in the consideration of this subject that the entire abstract purports to be a copy or recitation of what the court records show concerning the case.

The question presented need not be discussed as an original proposition, for it has been before this court. in one form or another, in many cases, and recently in the following: State ex rel. Caulfield v. Broaddus, 234 Mo. 331; Harding v. Bedoll, 202 Mo. 625; Hutchinson v. Patterson, 226 Mo. 174; State ex rel. Brown v. Broaddus, 216 Mo. 336; Elliott v. Delaney, 217 Mo. 14; Eliot v. Railroad, 204 Mo. 1.

In the Caulfield case, supra, the point before us was the sufficiency of the abstract as to the affidavit

for appeal and the order allowing the appeal. The abstract recital was:

"Afterward on the 26th day of May, 1909, at said April term, 1909, of said circuit court, defendant filed its application and affidavit for appeal, and on the same day the court granted and allowed the defendants an appeal to the Kansas City Court of Appeals, and approved the bond of said defendant for an appeal."

It will be observed that the recital in that case, which was held sufficient, does not refer directly to the record. It merely states the facts purported to be shown by the record, in narrative form. After a discussion of the former decisions, the court, l. c. 337, said: "It must be taken as the settled appellate procedure of the courts of this State that it is not necessary to set forth either the affidavit *in haec verba,* or its contents, in order to entitle appellant to a hearing of his appeal in the higher court." Under the foregoing authorities we hold that respondent's contention as to the recital under review is without substantial merit.

The abstract of the record proper contains the original petition and the first and second amended petitions, upon the last of which the case was tried. The first two petitions were abandoned pleadings and constituted no part of the record proper. They could only become a part of the record as matter of exception. They were not offered in evidence and therefore are not a part of the record. [Railroad v. Bank, 212 Mo. l. c. 517; Forrister v. Sullivan, 231 Mo. 345; Rule 9, rules of this court.] We sustain respondent's contention that the original and first amended petitions are not properly before us and cannot be considered on this appeal.

Many other points are made by the respondent in challenging the abstract of the record, and many authorities are cited in support thereof. We have examined them, but time and space forbid that we extend this opinion to the length necessary for a discussion

of each. We do not hold that the abstract is above criticism, but we do say it is in substantial compliance with our rules.

III. A number of errors are assigned by appellant for a reversal of the judgment, but the main contention relied upon is that the plaintiff failed to prove any liability of the defendant under the provisions of the bond.

The bond plainly obligates the surety company to make good to the bank any loss sustained by reason of the dishonesty of the cashier during the term of the bond (November 15, 1902, to November 14, 1903) "which losses shall be discovered during said term or within six months thereafter, and within six months after the determination of this obligation." The term of the bond ended November 14, 1903, and as the discovery of the loss was not made until January, 1906, it is obvious that it was not made during the term of the bond or within six months thereafter. We have before us therefore a provision of the bond sued on, clear and unequivocal in its meaning, which under the evidence expressly excludes liability of the obligor, unless there is some extrinsic reason for reaching a different result, not apparent in the evidence or on the face of the bond. It is no answer to say that the cashier, Lewis, fraudulently concealed his dishonesty and thus prevented a discovery within the time fixed by the bond. Dishonesty on the part of a bank official will always be attended with concealment. The fraud of Lewis, in concealing his embezzlements, is no more to be charged to the surety company than to the bank. Indeed, not so much; because by the terms of the bond the duty is imposed on the bank of observing and reporting any misconduct on the part of the cashier. Concealment of fraud may toll the Statute of Limitations in certain cases, but it is because it is so provided by law. We are not here dealing with that kind

of a case. The contract as made by the parties, provides that the surety must pay the loss if discovered within the time stated. There is no liability unless it is so discovered. It is not for the surety company to discover the dishonesty or the loss, but for the bank. This is the contract as made and under which the court must adjudicate the rights of the parties.

Neither can this plain provision of the bond be held to be an attempt to circumvent the Statute of Limitations with reference to the time allowed in which to bring an action. If the discovery had been made within the time fixed, plaintiff would then have had the full statutory period in which to sue. It is not a question of limiting the time for bringing an action which has already accrued, but rather whether any cause of action ever existed, for, unless we do violence to the language of the bond, two things are necessary before liability arises: first, a loss by the bank; and second, a discovery thereof during the time prescribed by the bond.

No decision of the appellate court of this State, containing a provision of a bond or contract similar to that under review, or substantially so, has been called to our attention, but the views herein expressed are in accord with the decisions of the courts of other jurisdictions. Although the respondent has rendered us no aid upon the merits of this case, we have not confined our investigation to the authorities cited by the appellant, but have made a full examination of all the adjudicated cases at hand upon the subject. We shall refer briefly to some of them.

In the case of American Surety Company v. Pauly, 170 U. S. 133, the bond construed by the court was not materially different from the bond in this case. Referring to the provision as to discovery of the loss during the term of the bond or within six months thereafter, HARLAN, J., delivering the opinion, said: "Undoubtedly the company did not agree to be liable for any

fraudulent or dishonest act of the cashier not discovered until after six months from his retirement from the service of the bank.''

Fidelity and Casualty Co. v. Bank of Timmonsville, 71 C. C. A. 299, is a case in which the following provision of a bond was construed, to-wit: ''That any claim under this bond, or a renewal thereof, shall embrace and cover only for acts and defaults committed during its currency, and within twelve months next before the date of the discovery of the act or default upon which such claim is based.''

The Fidelity Company was surety on the bond for the fidelity of the cashier of a bank. The item of loss under consideration was a special deposit of a bag of silver coin. After the cashier's flight it was found that the bag of coin was not in the vault, but the testimony failed to show whether or not the cashier, Lechner, had taken the silver within twelve months prior to the discovery of the loss. On those facts the court said: ''Unless the silver was taken by Lechner within twelve months prior to the discovery of the loss the bank had no right to recover for this default. The trial court, over the objection of the defendant, left it to the jury to say whether or not the defendant was liable as to this item. In so ruling we are constrained to hold that the learned trial court erred. The burden of proof was on the bank. The evidence left the time when Lechner committed the default in respect to the bag of silver wholly uncertain. He may have converted this money more than twelve months before the loss was discovered.''

The case last cited clearly holds that there is no liability unless the discovery of the loss is made within the time agreed upon in the bond, and fully sustains appellant's contention. The same construction is supported by the following authorities: Frost on Guaranty Insurance (2 Ed.), p. 325; De Jernette v. Fidelity

& Casualty Co., 98 Ky. 558; Fanning v. London Guar.
& Acc. Co., 10 Vic. L. R. (Cases at Law) 8.

We have not overlooked the case of U. S. Fidelity
& Guar. Co. v. McLaughlin, 76 Neb. 307, which is not
in entire accord with the doctrine of the foregoing
authorities, but, as expressly stated in the opinion in
that case, the question now under consideration was
not involved, and the case cannot be considered as an
authority thereon, if the bond is to be construed as a
private bond.

Among the declarations of law given at the request
of the plaintiff and over the objection of the defend-
ant, number two was as follows:

"The court declares the law to be that although
the loss under the bond in suit was not discovered
during the term of the bond or within six months
thereafter, still, if E. H. Lewis, the cashier of the Mid-
dleton Bank, concealed his fraud and dishonesty and
his misappropriations, and the officers and directors
of said bank prior to the appointment of the receiver
had no notice or knowledge of said fraudulent and
dishonest acts of said Lewis on account of his conceal-
ment thereof, as aforesaid, and could not have discov-
ered said loss by the exercise of ordinary care and
diligence, and if the discovery by the receiver that a
loss had occurred during the term of the bond was not
made until on or about the month of January, 1906,
and said receiver thereupon caused defendant to be
notified in writing of said loss at its principal offices
in the city of New York, and thereupon defendant
acknowledged the receipt of said notice and expressly
in writing denied any liability on account thereof, then
the finding will be for the plaintiff."

The theory upon which the court tried the case,
as indicated by said instructions, is in conflict with the
views herein expressed.

243 Sup.—40

For the reason that the evidence failed to show any liability of the defendant under the provisions of the bond, the judgment should be reversed. It is so ordered.

*Brown, P. J.,* and *Ferriss, J.,* concur.