## SECURITY LIFE INS. CO. OF AMERICA v. BRIMMER. *

Circuit Court of Appeals, Eighth Circuit.
November 14, 1929.

No. 8479.

Arthur S. Lytton, of Chicago, Ill. (Follett W. Bull and Olaf A. Olson, both of Chicago, Ill., D. S. Lamm, of Sedalia, Mo., and James C. Jones, Jr., of St. Louis, Mo., on the brief), for appellant.

Lawrence Barnett, of Sedalia, Mo. (Frank Hayes, of Sedalia, Mo., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

GARDNER, Circuit Judge. This is an action to recover on a policy of life insurance written by the defendant insurance company upon the life of Dr. Omar W. Clabaugh. The policy was written January 21, 1927.

On February 13, 1928, the insured died of a heart impairment known to the medical profession as coronary occlusion, or stoppage of a blood vessel which supplies the heart muscles. The occlusion or stoppage was

*Rehearing denied January 30, 1930.

caused by an embolus or thrombus; an embolus being a blood clot traveling through the blood stream, and a thrombus being a blood clot affixed to the wall of the blood vessel.

The answer set up as an affirmative defense that the insured made certain misrepresentations in his written application for insurance, in that in his application he gave false answers to certain questions contained therein, and that these false answers were known to him to be false and were fraudulently made to induce the issuance of the policy; that the matters misrepresented actually contributed to the insured's death; that defendant company did not know or learn of the falsity of these statements and representations until after the death of the insured.

In support of this defense the insurance company offered evidence to show the previous medical history of the insured and the cause of his death, and also to show by such history that the representations made by the insured in his application for insurance were materially false, and that such representations were relied upon by the insurance company. These representations in the application, by the terms of the policy, became a part of the policy. The substance of the representations so made, which are now claimed to have been false, are as follows: (1) Insured represented that he had never received treatment in any hospital, sanitarium, or asylum; (2) that he had never had any disorder of the brain or nervous system such as apoplexy, insanity, fits, sunstroke, nervous breakdown, etc.; (3) that he had never had any disorder of the heart or blood vessels such as palpitation, valvular diseases, endocarditis, fainting spells, piles, varicose veins, etc.; (4) that he had never had any disorder of the respiratory system such as pleurisy, pneumonia, asthma, bronchitis, chronic cough, tuberculosis, spitting blood, etc.; (5) that he had never had general diseases such as rheumatism, syphilis, diabetes, enlarged glands, goitre, cancer, growths, or tumors, etc.; (6) that he had never had any disease of the joints, bones, or spine; (7) that he had not within seven years prior to the date of the application consulted any physician not previously mentioned; (8) that to the best of his knowledge and belief he was in good health.

It appears from the evidence that in the spring of 1924 the insured was afflicted with an infection of the skin and was attended by physicians in the Christian Hospital at Kansas City. At that time one of the attending physicians observed that the insured had some arthritis of the spine, that his heart was somewhat enlarged, that his blood pressure was somewhat high, and that there was some evidence of asthma. The treatment at that time continued over a period of some three weeks, and during the following year the insured told his attending physician that he had had asthmatic attacks, and the physician observed an asthmatic condition, and, at that time, the physician thought the insured had myocarditis and because thereof the physician instructed the insured to be careful or he would have trouble therefrom.

Another physician produced as a witness by the defendant testified that he had found the insured's blood pressure above normal, found an asthmatic condition which he diagnosed as cardiac asthma due to an impairment of the heart, and that he had so informed the insured. In 1924 the insured, who was himself a practicing physician, asked this physician to go over his heart, blood pressure, and chest, and on doing so the physician found that the insured had a blood pressure of above 170, cardiac asthma, and a hypertrophied heart (an enlarged heart); the enlargement being about three quarters of an inch. The physician discussed with the insured his condition and cautioned him to be careful and not to overdo.

It also appears from the testimony that the insured had made claims under health insurance policies on account of rheumatism. Other testimony along the same lines was introduced by the defendant tending to show that at times prior to the making of the application for insurance the insured had various ailments, and particularly ailments which affected his heart. There was some modification of certain of this testimony brought out on cross-examination, and there was some doubt as to whether the asthma was heart asthma or bronchial asthma. The attending physician testifying for defendant as to the enlarged heart, on cross-examination, said: It was such a condition as comes on once in a while from just a little let down in a man's health—nothing great. That the insured's condition was the thing we all have when we start to slip a little with our heart, kidneys, fatigue and shortness of breath, just a letting down.

There was other evidence with reference to the condition of the insured's health from time to time, and with reference to his having consulted with physicians, prior to the taking out of this insurance, but, in the view we take of the case, this is not of the utmost importance. It appears that after the dates on which, it is claimed, the evidence shows the insured consulted physicians who found him suffering from the ailments enumerated, and

before he made his application for the policy written by the defendant, he was examined for insurance on March 21, 1925, on March 27, 1925, and on May 5, 1925, by Dr. A. E. Monroe, and upon these examinations was found to be a normal man. These examinations, made nearly two years before the application now under consideration was made, were in addition to the examination made by Dr. Ferguson, upon which the policy in suit was issued. In all, there were four examinations of the insured's condition by competent physicians, and on none of these examinations was insured's condition found to be other than normal. There was evidence by those knowing the insured intimately that he generally appeared healthy; that he had a rosy, pink, healthy looking complexion; was vigorous, active, and energetic until stricken with the malady which in four days resulted in his death. There was much other testimony introduced by the plaintiff tending to prove that whatever may have been the insured's condition in 1923 and 1924, when the physicians examined him, it had been cured or abated and was not present at the time application for the policy involved in this case was made, nor, so far as medical testimony and appearances indicate, for some considerable period preceding his death.

The defendant's medical witnesses admitted on cross-examination that, if the insured had had the heart trouble claimed, he would ordinarily have become pale and weak as he approached later stages of the disease. No doctor claimed to know all of the causes of coronary occlusion, but a great many of the causes were suggested by the medical witnesses. The testimony of course showed that the defendant's own physician examined the insured to determine his condition, and that this examination revealed no impairment or disease of the heart; that his blood and blood pressure were tested and found normal, and that his general appearance was healthy.

It is claimed by the defendant that it appears from the undisputed evidence that the answers made by the insured to the questions contained in the application for the insurance policy were false; that they were relied upon by the insurance company, and that the company was induced thereby to issue the policy.

In considering the question of the sufficiency of the evidence, the instructions as given will be accepted as the law governing the case. By these instructions the jury were advised: That the evidence showed that in his application for insurance the insured answered that he had never had any disorder of the heart. That under the terms of the policy this was a representation, and that it devolved upon the defendant to prove, by the greater weight of the evidence, that the insured had had such disorder of the heart, and that he knew that he had had the same, and otherwise the jury should not find against the plaintiff on the ground of such representations. Also that it devolved upon the defendant to prove that the insured at the time of making application for insurance had some disorder of the blood vessels, and that he knew of such disorder and that said disorder of his blood vessels actually contributed to his death; otherwise the jury could not find for the defendant upon the ground that the insured falsely represented that he did not have any disorder of the blood vessels.

The court instructed similarly with reference to the other alleged misrepresentations.

The jury was also instructed that if they found that the insured made misrepresentations, "as to matters which actually contributed to his death, the truth of which matters, if any, was unknown to the defendant, your verdict should be for defendant, provided that at the time he made the application the applicant knew that such matters were untrue, or that such matters were of such nature that the defendant company must have regarded the same as being within the personal knowledge of the applicant."

The general instruction is given specific application to each of the alleged misrepresentations, so that by the instructions it was made incumbent upon the defendant to prove that the insured, contrary to his representations, had the ailment or disease which he represented he had not had, and that he knew he had the same, or that such disorder was of such a nature or character that the defendant must have regarded the same as being within the personal knowledge of the insured, and that, unless the jury so found, they should return a verdict for the plaintiff on the ground of such representations.

The court refused to instruct the jury, at defendant's request (1) that innocence on the part of Dr. Clabaugh in making false statements was immaterial if, as a fact, the false statements concerned matters which actually contributed to his death; (2) that, if said matters were misrepresented in the application and same actually contributed to the death of Dr. Clabaugh, there could be no recovery.

It is therefore to be observed that, under the instructions, the court made it incumbent upon the defendant to prove the falsity of the representations; the knowledge of the

insured that they were false, or that such matters were of such nature that the defendant company might have regarded the same as being within the personal knowledge of the insured, and that the disorder, which he denied he had, contributed to his death.

It appears without dispute that after the times when it is claimed the doctors found the insured had certain diseases or disorders, and advised him thereof, he was examined on three different occasions for insurance, was passed, and that he was examined by the examining surgeon of the defendant company. ██ Now the jury may well have believed that the insured, even though he had previously had the disorders or diseases claimed, including some heart ailments, or symptoms thereof, had recovered from these, or that the doctors, who had diagnosed his symptoms, had been mistaken in the nature of his then ailments; or the jury might have found that the insured in good faith believed either that he had not had the diseases or ailments, or that he had recovered therefrom. At least reasonable men might well have reached different conclusions on these issues, and hence the case was properly sent to the jury if the court properly decided the questions of law involved. This court will not weigh the evidence, but if there was substantial evidence supporting the verdict it must stand.

██ There remains therefore to consider whether, in sending the case to the jury, the court did so under proper instructions. It seems to be conceded that the insurance policy in question was a Missouri contract, and that the following statute of Missouri is applicable.

Rev. St. 1919, § 6142. "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case shall be a question for the jury."

It is the claim of the defendant that there is but one test of materiality under this statute, and that is: Did or did not the matter represented actually contribute to the contingency or event upon which the policy became payable? The lower court by its charge informed the jury that misrepresentations as to matters which met the statutory test would not avoid the policy, unless, at the time the insured made them, he knew of the falsity of such statements, or that such statements were made with relation to matters of such charac-

ter or nature that the company must have considered them within the personal knowledge of the applicant.

We are of the opinion that this statute does not purport to create any defense to a suit upon an insurance policy, but that it destroys all defenses based upon misrepresentations concerning matters which do not contribute to the death of the assured, whether such statements be warranties or representations.

This statute leaves material representations as they were at common law. In Missouri a material representation to avoid a policy must be false, known to be such by the assured, or, if it consists of a mistake, that the mistake must be of such a character that the insurer must have regarded it as within the personal knowledge of the insured. State ex rel. Life Ins. Co. v. Allen, 310 Mo. 378, 276 S. W. 877; Simpson v. Metropolitan L. Ins. Co. (Mo. App.) 282 S. W. 454; Abernathy v. Springfield Mut. Assn. (Mo. App.) 284 S. W. 198.

██ Ordinarily false representations will not avoid a policy unless the assured knew they were false, or he were chargeable with such knowledge. This seems to be the rule applied in the National courts. Moulor v. Am. L. Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447; Northwestern Mut. L. Ins. Co. v. Wiggins (C. C. A.) 15 F.(2d) 646, 647; Campbell v. Business Men's Assur. Co. (D. C.) 31 F.(2d) 571.

The learned Circuit Court of Appeals of the Ninth Circuit in Northwestern Mut. L. Ins. Co. v. Wiggins, supra, says: "The insured made categorical answer to all questions. It must be assumed that such answers, if true, gave all information required to determine acceptance of the risk, and to avoid the risk or cancel the policy it must be shown that the answers were false and known to be false by the insured."

██ The statute invoked eliminates all defenses based upon representations concerning matters which did not contribute to the assured's death. It prescribes no rule with reference to the effect to be given to representations not within the ban of the statute. The effect of such representation is therefore a matter of general law.

Being a matter of general law and not dependent upon the local statute, this court will follow its own rule or the rule laid down by the Supreme Court of the United States. In Mutual L. Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 680, 60 L. Ed. 1202, it is said: "Considered in most favorable light possible, the above quoted incorrect

statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud."

█ █ It is charged that the court erred in refusing to give defendant's requested instruction No. 7 with reference to the previous consultations by assured with physicians and his treatment in hospitals. The instruction as given by the court is as follows: "The Court instructs the jury if you find and believe from the evidence that in his application for the policy of insurance involved in this case the deceased, Omer W. Clabaugh, in answer to questions, stated to defendant's medical examiner that he was in sound health, that he had never received treatment in any hospital, sanitarium or asylum and had not, within the seven years next before said application, consulted any physician; and if you further find from the evidence that said answers were untrue and that the said Clabaugh was not in sound health and that within the seven years next before said application, the said Clabaugh had consulted a physician for an illness or condition which actually contributed to produce his death, or had, prior to said application, received treatment in a hospital or sanitarium, for an illness or condition which actually contributed to cause his death; and if you further find from the evidence that defendant relied upon the truth of said representations in issuing the policy in suit and that the matters which were misrepresented, should you find them to have been misrepresented, contributed actually to the death of the assured, Clabaugh, then your verdict will be for the defendant, provided the jury also find from the evidence that the applicant knew that he was consulting a physician about the ailment which is alleged to have contributed to his death."

The charge as given is substantially as requested, except that the instruction as given required the jury to find that "applicant knew that he was consulting a physician about the ailment which is alleged to have contributed to his death" before they could regard the misrepresentation as material.

The falsity of insured's answer under this instruction would not avoid the policy, unless the jury should find that he knew that he was consulting the physician about the ailment which is alleged to have contributed to his death. It is recalled in this connection that there was testimony indicating that it was difficult for one to detect his own heart impairment, and, in view of this testimony and the verdict returned, it must be assumed that the jury found that the insured did not know that he was consulting a physician about the ailment which is alleged to have contributed to his death.

The Supreme Court of Missouri, in Keller v. Home Life Ins. Co., 198 Mo. 440, 95 S. W. 903, held that a false statement that the insured had not consulted a physician could not contribute to his death, and was therefore immaterial. This is the construction placed on section 6142, Rev. St. Mo. 1919. In the opinion in that case it is said: "While the diseases for which the insured sought other physicians for treatment may have contributed to his death, yet we are unable to understand how a false statement as to the mere fact as to whether he had consulted or had been treated by other physicians, could do so."

It would seem, therefore, that the defendant could not base a defense upon false representations concerning consultations with physicians, and hence it could not have been prejudiced by any alleged error of the lower court in submitting such a defense to the jury. But if defendant was entitled to have this issue submitted to the jury, we are of the view that the lower court properly charged the jury. The mere fact that the insured may have consulted a physician for some temporary ailment which did not contribute to his death could not be a material representation within the meaning of the Missouri statute. New York Life Ins. Co. v. Moats (C. C. A.) 207 F. 481.

The court's instructions did no violence to the Missouri statute invoked, nor to the decisions of the Missouri court in interpreting the same. The question of what constitutes false representation is a matter of general law on which the lower court correctly instructed the jury.

The judgment of the lower court is accordingly affirmed.