## Webster *v.* United States Fidelity & Guaranty Co.

(Division A. March 12, 1934.)

[153 So. 159. No. 31047.]

**Chester L. Sumners**, of Corinth, and **Fred B. Smith**, of Ripley, for appellant.

474

W. C. Sweat, W. H. Kier, Ely B. Mitchell and B. F. Worsham, all of Corinth, for appellee.

Argued orally by **C. L. Sumners**, for appellant.

**Cook, J.**, delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Alcorn county sustaining both general and special demurrers to an original bill of complaint filed by E. M. Webster, receiver of the First National Bank of Corinth, Mississippi, against the United States Fidelity & Guaranty Company, seeking to recover against defendant surety company on fidelity bonds issued by it to the said First National Bank covering fraudulent or dishonest acts of the officers and employees of the said bank, and particularly for recovery for alleged fraudulent and dishonest acts of Geo. A. Hazard, who was the president of the bank from the time of the execution of the first of said bonds until December 26, 1930. The bill of complaint alleged a loss to the bank on account of fraudulent and dishonest acts of the said Geo. A. Hazard in a total of eighty-one thousand nine hundred ninety-one dollars and forty-three cents, and prayed for a construction of the bonds and a determination of the amount due and owing thereunder and for a decree for the amount so found to be due under the provisions of the bonds, which was averred to be the sum of eighty-one thousand nine hundred ninety-one dollars and forty-three cents.

The first of this series of bonds was executed on the 14th day of May, 1924, and ran for a period of one year from that date. Continuation certificates were thereafter executed by the surety company, continuing this bond from year to year until May 14, 1928, at which

time a new bond was executed. The bond that was continued in force from May 14, 1924, to May 14, 1928, by continuation certificates was what is known as a "schedule bond," and provided that the defendant company would make good and reimburse to the said bank any and all pecuniary loss of money, securities, or other personal property belonging to the bank, "sustained by the employer by reason of the fraud or dishonesty of any employee for whom the company is or shall have become surety hereunder, in connection with the duties pertaining to the position to which he has been or may be appointed by the employer, amounting to larceny or embezzlement, occurring at any time after the fourteenth day of May, A. D. 1924, as to the employees named in the schedule, and as to any new employee at any time after his appointment, provided notice be given the company, as hereinafter stipulated, and prior to the fourteenth day of May, A. D. 1925, as to all employees (which said loss said be discovered during such term or within six months thereafter, or within six months from the death or dismissal or retirement of the employee from the service of the employer, within the period of this bond, whichever of these events shall first happen. Provided, however, the Company's liability on account of any employee shall in no case exceed the amount for which the company shall have become surety hereunder for such employee), which amount is set opposite his name in the schedule or shall be specifically stated in the acceptance hereinafter provided for."

The amount set opposite the name of the said Geo. A. Hazard, president, on the schedule attached to the said bond and for which the surety company assumed liability, was ten thousand dollars, and this bond, as continued in force until May 14, 1928, contained another provision limiting the aggregate liability as to any one employee to the largest amount covering such employee

as set forth in the said schedule, which reads as follows: "The company, upon becoming surety in a stipulated amount under the terms of this bond in behalf of any employee, shall not thereafter be responsible to the employer under any previous guarantee in behalf of such employee, whether under this or any prior bond, it being mutually understood that it is the intention of this provision that but one (the current) guarantee in behalf of any employee shall be in force at one time, and the company's aggregate liability under all its bonds and engagements covering any employee shall not exceed the largest bond or engagement covering such employee."

The new bond, which was executed on May 14, 1928, has a rider attached thereto which contains the following provisions:

"This bond is a continuation of the fidelity bond issued effective the 14th day of May, 1924, in favor of First National Bank, Corinth, Mississippi, on behalf of . . . various employees . . . now covered under the attached bond, and the surety agrees that in order to preserve the continuity of protection to the employer that the attached bond shall cover any loss or losses accruing under the prior bond, subject to the following conditions:

"That the attached bond shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses under said prior bond which shall be discovered before the expiration of the time limited in the attached bond for the discovery of loss thereunder and which would have been recoverable under the prior bond had it continued in force, and also under the attached bond, had such loss or losses occurred during the currency thereof.

"That nothing herein contained shall be construed to render the surety liable under the attached bond for a larger amount on account of any loss or losses under

said prior bond than would have been recoverable thereunder had it continued in force, or to increase the time for discovering, or making claim for loss under said prior bond beyond what would have been the time, had it continued in force.

"That the aggregate liability of the surety under said prior bond and the attached bond, on account of, any loss or losses, whether sustained under said prior bond or under the attached bond or partly under each, shall in no event exceed the larger of the amounts carried under said prior bond and under the attached bond on the employee causing such loss or losses."

The bill of complaint averred that the said Geo. A. Hazard was the president and an employee of the bank until December 29, 1930, at which time his connection as such employee ceased, and that the first discovery of the dishonest acts on the part of the said Hazard was made on the 10th day of May, 1932, more than a year and five months after his connection with the bank ceased.

The first contention of the appellee as set forth as a basis of the general demurrer is that under the terms and provisions of the first bond, which was renewed and continued in force until May 14, 1928, the surety company assumed liability for such losses only as were discovered during the term of the bond, or within six months thereafter, or within six months from the death, dismissal, or retirement of the employee from the service of the bank. In response to this point, the appellant contends that the provisions of the first bond attempting to limit the surety's liability to such losses as were discovered during the term of the bond, or within six months thereafter, or within six months from the retirement of the employee from the service of the bank, were modified or eliminated by the provisions of the 1928 bond, and, if not, that it was void for the reason that it was a mere limitation on the right to sue, and therefore in conflict

with section 2294, Code 1930, which provides that "The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contract stipulation whatsoever shall be absolutely null and void; the object of this statute being to make the period of limitations for the various causes of action the same for all litigants."

In support of the view that the attempted limitation of liability in the first bond was ineffective or was eliminated by the bond executed in 1928, the appellant relies upon a stipulation of the rider attached to the last bond, which provides that "the attached bond shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses under said prior bond which shall be discovered before the expiration of the time limited in the attached bond for the discovery of loss thereunder and which would have been recoverable under the prior bond had it continued in force, and also under the attached bond, had such loss or losses occurred during the currency thereof." It is not clear what was intended by the provision that the attached bond shall be construed to cover any loss or losses under said prior bond "which shall be discovered before the expiration of the time limited in the attached bond for the discovery of losses thereunder," as the bond to which the rider was attached does not appear to have any limit of time within which losses thereunder must be discovered to create liability therefor. But this clause does not end with the part above quoted, which is stressed by appellee, but the entire provision is that the attached bond shall be construed to cover any loss or losses under said prior bond "which shall be discovered before the expiration of the time limited in the attached bond for the discovery of loss thereunder and which would have been recoverable under the prior bond had it continued in force." Construing this entire clause of the rider, it

appears clear to us that, in addition to the liability thereunder for losses occurring during the currency thereof, it was intended thereby to make the last bond liable for such losses as would have been recoverable under the prior bond if it had continued in force. Therefore, in order to determine what added liability, if any, was created by the rider attached to the last bond, it is necessary to pass upon the validity of the provision of the prior bond limiting the liability thereunder to such losses as were discovered during the term of the bond, or within six months thereafter, or within six months from the death, dismissal, or retirement of the employee from the service of the bank.

In support of his contention that the said limitation in the first bond is void, the appellant relies on that line of cases illustrated by the cases of Dodson v. Telegraph Co., 97 Miss. 104, 52 So. 693; General Accident, Fire & Life Assurance Co. v. Walker, 99 Miss. 404, 55 So. 51; Standard Accident Insurance Co. v. Broom, 111 Miss. 409, 71 So. 653; National Casualty Co. v. Mitchell, 162 Miss. 197, 138 So. 808, and Hartford Accident & Indemnity Co. v. Delta & Pine Land Co. (Miss.), 150 So. 205, wherein it was held that provisions in contracts requiring notice to be given within a fixed time after a loss occurs or a cause of action arises thereon are in conflict with our statute providing that the statute of limitations shall not be changed by contract.

We do not think the provision hereunder reviewed attempts to change or limit the statutory period for bringing suits, but it is rather one providing what class of losses are covered thereby and limiting liability thereunder to those losses discovered within the time therein fixed. In the case of U. S. Fidelity & Guaranty Co. v. Williams, 96 Miss. 10, 49 So. 742, 743, the court had before it an identical provision of a fidelity bond which had been renewed from time to time, and it was there held that each renewal of the bond was a separate and distinct

contract, and that to recover under these bonds, which contained a provision limiting liability to those losses occurring during the continuation of the term of the bond or any renewal thereof, and "discovered during said continuance, or of any renewal thereof, or within six months thereafter, or within six months from the death or dismissal or retirement of said employee from the service of the employer," it was necessary to allege and prove that the loss was discovered within six months of the expiration of the bond, or in case the party insured had died, been dismissed, or retired, then in six months from the death, dismissal, or retirement, as the case might be. The court there further said: "Each bond is liable for such losses, and only such losses, as occur during its separate life, which is fixed by the contract for one year each, and discovered during the continuance or renewal, or within six months after the expiration of the year, but always limiting the right of recovery to losses which actually happen within the life of the particular bond. Since it is our view that the original contract and each of the renewals of same are separate and distinct contracts, and not one continuous contract of guaranty, it follows that the declaration, in order to show liability, must declare on the particular bond or renewal current at the time of the loss, and further allege that the loss was discovered within six months of the expiration of the bond, or, in case the party insured has died, been dismissed, or retired, then within six months from the death, dismissal, or retirement, as the case may be. There is no liability on the part of the insurance company, under the contract here sued on, except upon the conditions here stated, and unless the declaration itself makes out a cause of action a demurrer which challenges its sufficiency on that ground should have been sustained."

In the case of Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887, where the court had under

consideration an insurance contract providing certain disability benefits only upon the insured furnishing satisfactory proof of total or permanent disability while the contract was in full force, the right of parties assuming contractual obligations to make stipulations amounting to conditions precedent to liability was expressly recognized, and it was held that the furnishing of proof as required in the contract was a condition of liability, and that the statute of limitations, section 2294, Code 1930, had no application. To the same effects is the case of New York Life Insurance Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314.

That the same or similar provisions of insurance contracts are not a limitation on the right to sue but are limitations on the losses covered by the contracts is recognized by text-writers, and by many cases from other jurisdictions. 5 Couch on Ins. Law, section 1199v, cites numerous cases supporting a statement of the rule in the following language: ''A fidelity guaranty bond may, without contravening public policy, limit the liability of insurer on such bond to losses occurring and discovered within a specified term, where such guaranty does not attempt to fix the period within which suit shall be brought, and such a provision does not amount to a limitation as to time of bringing suit.''

Again, in the same volume, section 1199u, Couch announces the same doctrine in the following language: ''Again, fidelity guaranty bonds often contain express provisions with respect to when a default must be discovered in order to be within the coverage clauses thereof. For instance, under a fidelity bond which limits the risk to a loss sustained and discovered during the continuance of the bond, and within six months from the time the employee ceases to be in the service, the bonding company is not liable for any loss discovered more than six months after the termination of the continu-

ance of the bond, whether the employee has quitted the service or not.''

In the case of City Bank v. Bankers' Ltd. Mut. Cas. Co., 206 Wis. 1, 238 N. W. 819, 820, it was held that such a provision in an insurance contract relates wholly to liability and is not a limitation on the right to bring suit, the court saying: ''The plaintiff is not obliged to take out a policy of insurance, and, when it does, it may take it out upon such terms and conditions as in its opinion will best protect its interest. The fact that a policy is issued to it under the terms of which no liability arises unless the loss is discovered within eighteen months, certainly cannot be said to be contrary to public policy. The plaintiff must be presumed to know the limitations of the contract into which it enters. However great the necessities of the plaintiff bank may be, these cannot operate to change the plain intent and language of its contracts.''

In the case of Chicora Bank v. U. S. F. & G. Co., 161 S. C. 33, 159 S. E. 454, 455, 77 A. L. R. 857, in discussing the identical clause in an indemnity contract, the court said:

''It is a matter of contract, of substantial benefit to the guaranty company to have the period within which the loss was to be discovered fixed and determined. It was a safeguard to it to impose upon the insured such reasonable effort to keep in touch with its employees' work and faithfulness.

''It cannot be contended that such a limitation is obnoxious to the law of contracts; the limitation of an insurer's liability upon a fidelity bond to losses sustained and discovered within a stipulated period has been recognized and enforced in scores of instances.''

In the case of Ballard County Bank's Assignee v. U. S. F. & G. Co., 150 Ky. 236, 150 S. W. 1, 2 Ann. Cas. 1914C, 1208, the indemnity bond sued on contains practically the same condition as appears in the bond here

involved, and, in discussing the validity thereof, the court said: "The effect of such a provision in a bond is helpful rather than hurtful. Knowing that no recovery can be had for losses not discovered within the time fixed by the bond, the bond itself is an incentive to the officers of the bank to do their duty by making frequent and careful examinations of the accounts of its employees. Similar provisions to the one in question have been upheld by the courts; and it is well settled that, where the liability of the insurer is limited to losses discovered within a specified time, there is no liability, unless the fraud, dishonesty, or negligence causing the loss not only occurred, but was discovered, within the time limit."

In the case of American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 558, 42 L. Ed. 977, in considering a clause in an insurance contract, similar to the one involved in the case at bar, the Supreme Court of the United States said: "Undoubtedly, the company did not agree to be liable for any fraudulent or dishonest act of the cashier not discovered until after six months from his retirement from the service of the bank." To the same effect are the cases of De Jernette v. Fidelity & Cas. Co., 98 Ky. 558, 33 S. W. 828, 17 Ky. Law Rep. 1088; Mayor, etc., of Brunswick v. Harvey, 114 Ga. 733, 40 S. E. 754; Ladies of Modern Maccabees v. Illinois Surety Co., 196 Mich. 27, 163 N. W. 7; Thompson v. American Surety Co. (C. C. A.), 42 Fed. (2d) 953; Lyons v. National Surety Co., 243 Mo. 607, 147 S. W. 778; Granite Bldg. Co. v. Saville's Adm'r, 101 Va. 217, 43 S. E. 351; Lombard Investment Co. v. Amer. Surety Co. (C. C. A.), 65 Fed. 476; Fidelity & Cas. Co. v. Bank of Timmonsville (C. C. A.), 139 Fed. 101; and also 14 R. C. L. 1268, and 26 C. J. 1096.

In the case at bar the bill of complaint alleged that the losses were not discovered until more than a year after the expiration of the last bond. There was a rider

to this last bond, providing that nothing therein contained should "be construed to render the surety liable under the attached bond for a larger amount on account of any loss or losses under said prior bond than would have been recoverable thereunder had it continued in force, or to increase the time for discovering, or making claim for loss under said prior bond beyond what would have been the time, had it continued in force." And since we hold that the provision of the first bond, which we have been considering, was a limitation on the losses covered thereby, there can be no recovery for any losses under the first bond and the renewals thereof.

The appellee further contends that likewise there can be no recovery under the last bond, for the reason that by the rider attached thereto all the provisions of the first bond, including the limitation of time for discovery of losses, were brought forward and incorporated in the last bond. The provision of the rider relied upon as having this effect is merely that the last or attached bond was a continuation of the first bond executed on behalf of the various employees then covered by the last bond. We do not think this provision had the effect of bringing forward and incorporating into the last bond the limitation with reference to the discovery of losses within a fixed time. When all the provisions of this rider are considered together, it appears that the only purpose of the clause last above referred to is to continue the prior bond for the purpose of permitting a recovery under the last bond for any losses recoverable under the terms of the prior bond. The last bond, which was executed May 14, 1928, contains no provision requiring losses thereunder to be discovered within any fixed time to create liability therefor, therefore the appellant is entitled to recover under the terms and conditions thereof for losses occurring during the term thereof; and it was error to sustain the general demurrer to the bill of complaint.

The rider attached to the last bond provided also that "the aggregate liability of the surety under said prior bond and the attached bond, on account of, any loss or losses, whether sustained under said prior bond or under the attached bond or partly under each, shall in no event exceed the larger of the amounts carried under said prior bond and under the attached bond on the employee causing such loss or losses." The total liability under the last bond for losses resulting from the fraud or dishonesty of the said Geo. A. Hazard was fixed by a schedule thereto attached at ten thousand dollars. The bill of complaint charged that losses largely in excess of that amount occurred during the period that this bond was in force; but, if losses in excess of ten thousand dollars are proved, the recovery should be limited to that sum.

Reversed and remanded.