Francis Everett **BRANDER, Individually and on behalf of all those underwriters at Lloyd's subscribing to policy # 24563, Plaintiff,**

v.

**Thomas Jackson NABORS, Defendant.**

No. EC 76–223–K.

United States District Court, N. D. Mississippi, E. D.

Jan. 12, 1978.

Louis G. Baine, Jr., Jackson, Miss., for plaintiff.

William S. Lawson, Tupelo, Miss., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This diversity action by Francis Everett Brander, a citizen and subject of Great Britain (hereinafter Lloyd's),[1] against Thomas Jackson Nabors, a Mississippi citizen, seeks a declaratory judgment of noncoverage under Lloyd's Policy No. 24563. The parties agreeing that no issues of material fact are raised at this juncture of the case, have filed cross motions for summary judgment under Rule 56, F.R.Civ.P.

The relevant facts, gleaned from the pleadings, policy provisions and evidentiary materials on file, may be briefly summarized.

On November 12, 1968, Lloyd's issued a medical malpractice liability insurance contract, Policy No. 24563, to the assured, Drs. Royce Houston Franks and Thomas Purser, III, of Tupelo, Mississippi. The policy explicitly states that the insurance is provided on a "claims made basis," with the original period of insurance being from November 12, 1968, to November 12, 1969. By renewal, the insurance period was extended for an additional year, or to November 12, 1970. The relevant terms of the policy provide that

"2. . . . WE THE UNDERWRITERS hereby agree, subject to the terms, limitations, exclusions and conditions of this Insurance, to pay on behalf of the Assured all sums which the Assured shall by law be held liable to pay for damages arising out of bodily injury or mental injury to or death of any patient caused by or alleged to have been caused by error, omission or negligence in professional services rendered or which should have been rendered (hereinafter referred to as Malpractice).

PROVIDED ALWAYS THAT

(a) such Malpractice results in a claim being made against the Assured during the period of Insurance as stated in the Schedule. . . .

(c) there shall be no liability hereunder for any claim made against the Assured for Malpractice committed or alleged to have been committed prior to the Retroactive Date specified in the Schedule.

5. In the event of

(a) the expiration of this Insurance by reason of nonrenewal, . . .

then this Insurance shall extend, subject otherwise to its terms, limitations, exclusions and conditions, to apply to claims made against the Assured during the thirty-six calendar months following immediately upon such expiration or termination *but only for* Malpractice committed or alleged to have been committed between the Retroactive Date and such expiration or termination." (Emphasis in the original)

The "retroactive date" specified in the schedule was November 12, 1968, which coincided with the precise date on which the original period of insurance commenced.

On or about March 19, 1975, Thomas Jackson Nabors, defendant in the present action, brought a diversity action in this court against Dr. Thomas Purser, III, one of the named assureds, seeking recovery for serious injury caused by acts of medical malpractice alleged to have occurred between August 1968 and June 1970. On April 15, 1976, Nabors recovered, by way of compromise settlement, a judgment for $100,000. On August 12, Dr. Purser assigned his rights under Lloyd's policy to Nabors and his attorney.[2]

---

1. Brander represents not only himself but all other underwriters of Lloyd's of London subscribing to the particular insurance policy in issue.

2. The assignment appears to operate as a discharge of Purser's liability; however, Purser, by affidavit, states that his personal liability would be discharged only in event collection is effected against Lloyd's in the present case.

Lloyd's initially assigned the absolute discharge of Purser as an alternative ground for summary judgment. Since it appears that material factual issues exist as to the intent and effect of the assignment upon Purser's continuing liability, if any, upon the judgment he allowed to be entered against him in the malpractice suit, it would be inappropriate to address this issue in the context of a motion for summary judgment.

Lloyd's contends that it is not liable since no claim under the policy was made against the assured, Dr. Purser, until March 19, 1975, a date occurring fifty-two months after its policy had expired and sixteen months after the end of the three-year extension, provided by provision 5(a) as set out above.

Defendant argues that liability is cast upon Lloyd's under alternative theories.

First, the defendant maintains that the policy provisions, when considered as a whole, create an ambiguity, which defendant is entitled to have resolved in his favor, as to the character of the coverage afforded by the policy; that is, a reasonable doubt exists as to whether the policy provides coverage on an "occurrence" basis or a "claims made" basis. Defendant reasons that once this ambiguity is resolved in his favor by a declaration that Lloyd's has provided insurance on an "occurrence" basis, the policy terms limiting the time within which a claim must be made against the assured violate the prohibitions expressly stated in Miss.Code Ann. § 15–1–5 (1972).[3]

Alternatively, the defendant argues that the policy provides for coverage which is so structured that it offends Mississippi public policy, and therefore its restrictions are unenforceable.

### (1) Background.

The insurance industry has, for some years, provided two basic types of professional liability insurance which may be classified as (a) "claims made" policies (sometimes called "discovery" policies), and (b) "occurrence" policies.

■ The basic "claims made" or "discovery" policy provides for indemnity, regardless of when the act complained of occurred, if the act is discovered and brought to the attention of the insurer during the policy period.

■ The basic "occurrence" policy provides for indemnity, regardless of when the act complained of is discovered or brought to the attention of the insurer, if the act occurred during the policy period.[4]

The case law throughout the country has generally recognized the difference in these two basic types of coverage. *See e. g., Samuel N. Zarpas, Inc. v. Morrow*, 215 F.Supp. 887 (D.C.N.J.1963), *Rotwein v. General Accident Group*, 103 N.J.Super. 406, 247 A.2d 370 (1968), *see also* Comment, The "Claims Made" Dilemma in Professional Liability Insurance, 22 U.C.L.A.L.Rev. 925 (1975), Comment, Professional Liability Insurance: The Doctor's Dilemma, 7 Loyola U.L.Rev. 459 (1976).

■ Basically, the "claims made" policy would provide unlimited retroactive coverage and no prospective coverage at all, while the "occurrence" policy would provide unlimited prospective coverage and no retroactive coverage at all.

**3.** § 15–1–5. Period of limitations shall not be changed by contract.

The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatever shall be absolutely null and void, the object of this section being to make the period of limitations for the various causes of action the same for all litigants.

**4.** Prior to the issuance of the policy, the insured signed the following document indicating the difference between the two types of policies:

I, the undersigned, understand that the application I am completing is to enable me to obtain a quote and if coverage is later provided to obtain coverage on a "claims made basis" and not on an "occurrence basis".

The principal difference in these two basis is that on a "claims made basis" coverage is provided if the malpractice which occurred or was alleged to have occurred results in a *claim being made* against the assured *during the period of insurance* as stated in the schedule and of which immediate notice has been given in accordance with the conditions in the policy. On this basis the alleged malpractice could have actually occurred at any time after the "retroactive date specified in the schedule" if the claim is made during the currency of the policy.

Under an "occurrence basis" coverage is provided for any occurrence which took place during the currency of the policy regardless of when the claim is later made.

s/ T. Purser, M.D.

SIGNATURE OF APPLICANT

Despite the judicial harmony in defining these two forms of professional liability insurance, courts have reached divergent views when construing policies containing more restrictive, or different provisions.

In *Jones v. Continental Casualty Co.*, 123 N.J.Super. 353, 303 A.2d 91 (Sup.Ct.N.J. 1973), the court was confronted with a policy containing the following relevant terms:

IV. Policy Period, Territory.

(a) During the Policy Period. The insurance afforded by this policy applies to errors, omissions or negligent acts which occur * * * during this policy period if claim therefor is first made against the insured during this policy period.

(b) Prior to the Policy Period. The insurance afforded by this policy also applies to errors, omissions or negligent acts which occur within the United States of America, * * * prior to the effective date of this policy if claim therefor is first made against the insured during this policy period and if all of the following requirements are present:

(1) the error, omission, or negligent act was also insured by this Company under the prior policy (as defined below) * *

(2) no insured, at the effective date of the prior policy (as defined below), had any knowledge of a pending claim which might be made against any insured or had any knowledge or any circumstance which may reasonably be expected to create a claim against any insured.

Prior policy (for the purpose of this insuring agreement) means the combined total of all architects' and/or engineers' professional liability policies issued by this Company beginning with the first architects' and/or engineers' professional liability policy followed continuously by successive architects' and/or engineers' professional liability policies, the last of which expired on the effective date of this policy.

The court held that the terms which limited retroactive coverage to acts which occurred while the insured maintained coverage with the same insurer inhibited freedom of contract, and, further, that the total absence of any prospective coverage violated the public policy of New Jersey "in favor of extending time for making claim or bringing suit for a wrong in the professional liability field." *Jones v. Continental Cas. Co.*, supra, 303 A.2d at 96.

*J. G. Link v. Continental Casualty Co.*, 470 F.2d 1133 (9 Cir. 1973), which was a Montana diversity based action, involved a policy providing coverage "if claim . . is first made against the insured during this policy period." The court found the policy ambiguous in two respects: ". . . the insurance contract is ambiguous in that it is not clear whether the policy is a 'discovery' or an 'occurrence' policy, and it is likewise unclear whether information given the insured [on a date within the policy period] constitutes a claim . . ." The court regarded it unnecessary to resolve the first ambiguity since it held that the insured was entitled to prevail upon a favorable resolution of the second. In dictum, the court noted that the insured would also prevail if the policy were found to be an "occurrence" policy since the "if claim" clause would then be void under Montana's statute prohibiting limitation of the "time within which [the insured] may . . . enforce his rights." R.C.M. § 13–806.

In *Livingston Parish School Board v. Fireman's Fund American Ins. Co.*, 282 So.2d 478 (La.1973), a policy having terms identical to those held to have violated New Jersey public policy in *Jones* and held to be ambiguous in *Link* was found neither ambiguous nor violative of the public policy of Louisiana.

Although the policy terms are not set forth in the opinion, the Ninth Circuit, in *Cornell, Howland, Hayes & Merryfield, Inc. v. Continental Cas. Co.*, 465 F.2d 22 (1972), construing Oregon law, one year before *Link*, upheld the "claims made" policy of Continental Casualty Company and dismissed suit against the insurer in reliance upon *Rotwein, Cornell,* supra, at 25.

It is against this background of conflicting decisions that we approach the issues before us. The parties acknowledge that Lloyd's obligations as an insurer, and Drs.

Franks and Purser's rights as the assureds must be determined by the substantive law of Mississippi since the insurance policy was delivered in that state to assured who resided in Mississippi. According to our research, Mississippi has no case in point.

### (2) *Is The Policy Ambiguous?*

█ A basic rule of law, recognized in Mississippi and universally, is that insurance policies like other written contracts, are construed most strongly against the drafter, *State Farm Mutual Auto. Ins. Co. v. Taylor*, 233 So.2d 805 (Miss.1970), *Canal Ins. Co. v. Howell*, 248 Miss. 678, 160 So.2d 218 (1964), and any ambiguity in an insurance policy is construed against the insurer and in favor of the insured, *McLaurin v. Old Southern Life Ins. Co.*, 334 So.2d 361 (Miss.1976), *Mavar Shrimp & Oyster Co. v. U.S.F. & G. Co.*, 187 So.2d 871 (Miss.1966). "If the terms of an insurance policy are reasonably susceptible to two interpretations, the one sustaining indemnity must prevail." *New Orleans Furniture Mfg. Co. v. Great American Ins. Co.*, 413 F.2d 1278, 1280 (5 Cir. 1969), *Aetna Life Ins. Co. v. Evins*, 199 So.2d 238 (Miss.1967).

█ It is equally well settled that "the special rules favoring the insured are only applicable when there *is* an ambiguity. . . [and that] courts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties . . . even when the result is an apparently harsh consequence to the insured," *Calcasieu-Marine National Bank of Lake Charles v. American Employers' Ins. Co.*, 533 F.2d 290, 296 (emphasis added) (5 Cir. 1976); *State Auto. Mutual Ins. Co. of Columbus, Ohio v. Glover*, 253 Miss. 477, 176 So.2d 256 (1965). Courts will neither create an ambiguity where none exists nor make a new contract for the parties. *Life & Casualty Ins. Co. of Tennessee v. Harvison*, 187 So.2d 847 (Miss. 1966). If the policy language is clear, unequivocal, and, hence, unambiguous, its terms will be enforced, *Employers Mutual Cas. Co. v. Nosser*, 250 Miss. 542, 164 So.2d 426, suggestion of error overruled, 250 Miss. 542, 168 So.2d 119 (1964); *Caldwell v. Hart-*

*ford Accident & Indemnity Co.*, 248 Miss. 767, 160 So.2d 209 (1964), since "[t]he power to make such contracts as the parties desire to make, when not prohibited by law or public policy, is a fundamental principle of the . . . insurance business, and is essential to its successful conduct." *Berry v. Lamar Life Ins. Co.*, 165 Miss. 405, 142 So. 445, 446 (1932).

█ Defendant does not claim that any specific provision of the policy is unclear or ambiguous on its face, and we agree that this is correct. Indeed, the policy provisions are clear, precise, and admit of only one reasonable interpretation. The thrust of defendant's argument is that the policy provisions, when considered as a whole, create an ambiguity as to the *nature of the coverage* afforded by the policy, i. e., an uncertainty exists as to whether the coverage is on an "occurrence basis" or on a "claims made" basis, and therefore he is entitled to have this inherent ambiguity resolved in his favor by a judgment declaring the coverage to be on an "occurrence basis." This inherent ambiguity is said to arise from the fact that this policy, unlike the ordinary "claims made" policy, defines the risk insured against not merely by reference to the period of time within which a claim against the assured must be made (the five years between the effective date of this policy—November 12, 1968—and the expiration date of the three-year period of prospective coverage commencing upon expiration of the policy, November 12, 1973), but *also* by reference to the period of time within which the alleged act of malpractice must have occurred (the two years between November 12, 1968, the "retroactive date," and November 12, 1970, the date on which the policy expired). By thus defining the scope of coverage, the defendant argues, Lloyd's has attempted to secure "the best of both worlds," and thereby has created coverage of a doubtful, if not equivocal, character.

Despite the ingeniousness of defendant's argument, we find no merit in the notion that uncertainty prevails as to the nature of the policy coverage. The policy explicitly states, in bold type, that the insurance is

provided on a "claims made basis." The risk insured against is constantly defined throughout the policy primarily in terms of the time within which a *claim against the assured must be made*—the standard language employed to define the risk in "claims made" professional liability insurance.[5] The fact that the "retroactive date" in this policy is the same as the date on which the original period of insurance commenced (and thus coincides with the date on which premiums became collectible) in no way obscures the plan purport of the other policy provisions. Defendant vigorously insists that coverage for acts of malpractice occurring *prior* to the effective date of the policy is a sine qua non for a valid "claims made" insurance policy, but we have neither been cited to, nor have we discovered, any decision which sustains this dogmatic proposition. While coverage for acts of malpractice occurring prior to the effective date of a policy is a feature common to many of the "claims made" policies which have been the subject of judicial interpretation, we see nothing in the provisions of this policy, effectively limiting coverage to acts of malpractice occurring during the life of the policy merely because the "retroactive date" and the first day of the original period of insurance are the same—November 12, 1968, that violate any statute or any judicially-recognized principle of insurance law. *See Cornell* and *Rotwein*, supra.

The policy in the case sub judice is unlike the policy in *Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 110 Cal.Rptr. 139, 514 P.2d 1219 (1973), which provided:

"This insurance is to indemnify . . against any claim or claims for breach of professional duty as Lawyers which may be made against them during the period set forth in the Certificate by reason of any negligent act, error or omission, whenever or wherever the same was or may have been committed.

"If during the subsistence hereof the Firm shall become aware of any occurrence which may subsequently give rise to a claim against them for breach of professional duty as Lawyers by reason of any negligent act, error or omission and shall during the subsistence hereof give written notice to the Underwriters of such occurrence, then any such claim which may subsequently be made against the Firm arising out of that negligent act, error or omission shall for the purposes of this Insurance be deemed to have been made during the subsistence hereof."

The California Court held that "[t]he crucial phrase in the first paragraph, 'claim or claims . . . which may be made during the policy period, is ambiguous with respect to whether coverage is limited to claims asserted during the policy period or extends to claims maturing during the policy period but not asserted until later." *Gyler*, supra, 110 Cal.Rptr. at 140 at 1220. The Court resolved the ambiguity in favor of the insured, sustaining coverage for an act which occurred during the policy period and resulted in a suit against the insured after the policy period. We see neither reason nor logic in the defendant's position that the absence of a period of retroactive coverage is fatal to Lloyd's policy. If, to be valid, a claims made policy had to have a retroactive period of coverage, what measure of time would suffice—a day, a week, a month, a year, or unlimited? Common sense as well as established jurisprudence supporting the right of parties to be free in the making of contracts refute the defendant's contention that would have us require retroactive coverage in order to uphold an otherwise valid "claims made" policy.

(3) *Does The Policy Violate § 15–1–5 Miss.Code Ann. (1972)?*

■ Our decision on this issue turns on whether the restrictions as to time articulated in the policy, during which claims must be made against the assured, are valid conditions precedent to the insurer's liability or impermissible attempts to shorten the

---

5. The insured, undoubtedly in applying for this policy, understood such to be the case. *See* n. 4, supra.

state's applicable six-year statute of limitations.

The precise question is one of first impression in Mississippi. Nevertheless, several decisions of the Supreme Court of Mississippi, not analogous on their facts but pertinent in principle, are instructive, and furnish a guide in our ascertaining the law of the forum state.

In *Berry v. Lamar Life Ins. Co.*, 165 Miss. 405, 142 So. 445 (1932), suggestion of error overruled, 165 Miss. 405, 145 So. 887 (1933) (en banc), a life insurance policy required the insured to furnish proof of disability as a condition precedent to waiver of premiums, and this clause was held not to have violated § 2294 Miss.Code (1930) (predecessor of § 15–1–5 Miss.Code Ann. (1972)). In construing the statute prohibiting contractual attempts to vary limitations, the Court expressed the following rationale:

> [The statute] was designed to leave the statute of limitations in force as the Legislature made it . . . not . . . to prevent parties making stipulations amounting to conditions precedent to liability in assuming obligations in contractual matters. *Berry*, 142 So. at 466.

In *Berry*, and other Mississippi cases, policyholders have argued that the proof of disability requirement was an abridgement of the six-year statute since their rights to waiver of premiums matured at the time their disability occurred and the cause of action to enforce such right arose simultaneously therewith. The Court's response has been "[t]he clause of the contract here under consideration prescribes the condition upon which the liability may arise, and does not undertake to change the limitation prescribed by our statute as to when a suit may be brought after liability accrues." *Cox v. Lamar Life Ins. Co.*, 208 Miss. 146, 43 So.2d 884, 886 (1950). "Proof of disability is a condition precedent to liability . . . the cause of action does not arise until such proof is made . . . the statute does not begin to run until proof is made." *Metropolitan Life Ins. Co. v. Lindsey*, 184 Miss. 359, 185 So. 573, 575 (1939). *See New York Life Ins. Co. v. Alexander*, 122 Miss. 813, 85

So. 93 (1920), *Mutual Life Ins. Co. v. Hebron*, 166 Miss. 145, 146 So. 445 (1933). These cases uniformly denied liability when policyholders failed to comply with the terms of the contract, thus fulfilling conditions of liability without manifesting any concern regarding the fact of a policyholder's disability where his efforts to furnish proof thereof did not comply with the policy conditions.

An entirely different outcome has resulted in cases concerned with policy provisions which require notice to the insurer within a specified period *after* the insurer's liability has become fixed. In *Standard Accident Ins. Co. v. Broom*, 111 Miss. 409, 71 So. 653 (1916), the court invalidated, as contrary to the statute, a policy provision requiring "written notice of any accident or injury to [the assured] for which claims against the [insurer] could be made under [the] policy, with full particulars thereof, within 15 days after the date of the accident causing the loss for which claim was made . . . ." *Id.* 71 So. at 653. Similarly, a twenty-day period for notice to the insurer was held void in *National Casualty Co. v. Mitchell*, 162 Miss. 197, 138 So. 808 (1932). The essential difference between these cases and the case sub judice is that the invalid notice requirements were attempts to limit the time period within which the assured, in order to enforce his rights under the policy, must act *after* the conditions precedent to the insurer's liability had been satisfied.

Several cases which involved fidelity bond losses are pertinent to the distinction drawn in Mississippi jurisprudence, and they should be noted here. In *Webster v. United States Fidelity & Guaranty Co.*, 169 Miss. 472, 153 So. 159 (1934), fidelity bond provisions were upheld against a claim that they violated the statute prohibiting changing the applicable six-year limitation period for commencement of suit. The term of the bond unsuccessfully challenged on that ground provided that the insurer's liability was limited "to such losses as were discovered during the term of the bond, or within six months thereafter, or within six months from the death, dismissal, or retirement of

the employee [covered by the bond]." *Id.* 153 So. at 161–62. The Court held that this provision "do[es] not . . . change or limit the statutory period for bringing suit, but it is rather one providing what class of losses are covered thereby and limiting liability thereunder to those losses discovered within the time therein fixed." *Id.* 153 So. at 162. The Court observed that "the same or similar provisions of insurance contracts are not a limitation on the right to sue but are limitations on the losses covered by the contracts . . . ." *Id.* A different result, however, has obtained when an insurer has attempted to shorten the time within which suit may be brought *after* the conditions precedent to the insurer's liability have occurred. This is illustrated by *Latham v. U.S.F. & G. Co.*, 267 So.2d 895 (Miss.1972), where a policy requiring that suit against the insurer be brought within one year after the insurer's liability had become fixed was invalidated by the predecessor of § 15–1–5. *See, Stuyvesant Ins. Co. v. A. C. Smith Motor Sales Co.*, 135 Miss. 585, 99 So. 575 (1924).

We find it highly significant that in *Aetna Life Ins. Co. v. Walley*, 174 Miss. 365, 164 So. 16 (1935), the Supreme Court of Mississippi refused to invalidate the notice requirements contained in a medical malpractice insurance policy alleged to have been violative of § 2294 of the Code of 1930. The Court reasoned:

> The notice herein required is not of a past event which fixed the insurer's liability.
>
> .    .    .    .    .
>
> The notice here required in no way affects the time within which suit must be brought on a policy, or within which notice must be given of a liability claimed to have arisen thereunder. The right of the insured to recover on this policy does not arise, if at all, until the termination of a suit against him for malpractice, and the time within which the insured must sue on the policy begins when, but not until, the termination of such a suit. These clauses of the policy relate only to things to be done before liability thereon becomes fixed, and when such is the case

Section 2294, Code of 1930, is not violated. *Aetna Life Ins. Co. v. Walley*, supra, 164 So. at 19–20.

The challenged time restrictions in the Lloyd's policy before us are closely analogous to the notice requirements of the policy upheld in *Walley*. The provisions of neither policy limit the time within which the insured must act to enforce his rights, once they have accrued. Both provisions establish factual conditions which must be met in order to accrue the rights to be enforced.

Our holding in no way militates against the right of defendant Nabors to maintain an action for malpractice against Dr. Purser within the six-year period applicable to the facts on which the present claim of malpractice was based. What would violate § 15–1–5 would, for example, be an agreement by Nabors, as a condition to Purser rendering professional services to Nabors, to sue on any alleged claim of malpractice within a period of time less than that fixed by the applicable statute of limitation; for the statute prohibits only parties from agreeing, by contract, to shorten period of time within which to commence a cause of action.

Consonant with the principles announced in these Mississippi cases, we find that Lloyd's policy limitations relating to the time within which a claim must be made against the assured are valid conditions precedent to the insurer's liability and are not violative of § 15–1–5.

(4) *Does The Insurance Agreement Violate Public Policy?*

■ Defendant argues that coverage under the policy should be sustained on the ground that its restrictions violate Mississippi public policy. We note initially that Mississippi has adopted a conservative, if not narrow, view regarding the power of its courts to invalidate contracts on public policy grounds, requiring that the contract be prohibited by "express terms on the fair implication" of a statute or prior judicial precedent. *Orrell v. Bay Mfg. Co.*, 83 Miss. 800, 36 So. 561 (1904); *State ex rel. Knox v.*

*Edward Hines Lumber Co.*, 150 Miss. 1, 115 So. 598 (1928).

■ The Mississippi courts recognize that "[t]he insurance business is affected with a public interest and is regarded generally as quasi-public in character. . . . There are numerous statutes enacted by the legislature regulating insurance and in many instances specifying precise clauses that are written into insurance policies by law." *Travelers Indemnity Co. v. Watkins*, 209 So.2d 630, 632 (Miss.1968).

The right to contract is a sacred right, and a contract, entered into in good faith, free from fraud, and not in violation of the law by the parties, like a man's word, should be respected and enforced. The court should not alter or nullify a contract that is lawful, unambiguous and embodies the agreements of the contracting parties. If it is oppressive, and if generally utilized will not be for the public good, then it is within the province of the legislative branch of our state government to modify, restrict or prohibit, but not unconstitutionally, the contracting rights and powers of its citizens. *Employers Mutual Cas. Co. v. Nosser*, 250 Miss. 542, 164 So.2d 426, 438, suggestion of error overruled 250 Miss. 542, 168 So.2d 119 (1964).[6]

We have been cited to neither a statute, nor a judicial decision which "explicitly or by fair implication" prohibits the use of the restrictive provisions of the insurance policy under consideration. Moreover, we are of the firm opinion that the freedom to offer malpractice insurance contracts similar to the one before us serves the public interest. If limitations on retroactive coverage were not permitted in "claims made" policies, neither the beginning practitioner nor the insurance customer who wished to change from "occurrence" to "claims made" coverage could do so without purchasing unnecessary retroactive insurance protection.

Moreover, the requirement of retroactive coverage, for a "claims made" policy to be valid, would likely be an invitation to fraud. It would enable the insured to obtain coverage for past negligent conduct known to him but unknown to the insurer. Indeed, it would be literally impossible in many cases for the insurer to protect itself when extending insurance to applicants who wished to purchase coverage while concealing a past act which the applicant knew, or had reason to believe, might lead to a claim. The hazard of fraud upon the insurer increases in direct proportion to the length of the period of retroactivity.

We would be confronted with a more serious question of public policy if a "claims made" policy with neither a period of retroactive coverage nor a period of prospective coverage, but requiring notice to the insurer within the policy period, were involved; in that event, the insurance coverage would be effective only for the time premiums are paid, and during which notice of the claim would have to be given to the insurer. Such a policy would necessitate closer scrutiny from the standpoint of what period of coverage is reasonable in light of public policy. That precise issue is, however, not before us, and we express no opinion as to the validity of a policy structured on such narrow grounds. One of the most significant features of the Lloyd's policy presently before us is the unquestionably reasonable period of prospective coverage—thirty-six months from expiration of the policy—within which claims against the assured may be made.

Given this type of contract, we are unable to perceive that the public policy of Mississippi is offended by the insurance agreement which Lloyd's has written. Obviously, it is not against the public interest that professional practitioners, for example, doctors, lawyers, engineers, and architects, be

---

**6.** In regard to the deference paid by the Mississippi Supreme Court to the legislative branch in matters of public policy, we note the recent enactment of § 15–1–36 Miss.Code Ann. (1972), which will, in most cases, shorten the applicable limitations period for bringing medical malpractice actions from six years (which we surmise in the absence of legislative history to have been regarded by the Legislature as unduly long) to two years. See Chapter 473, Mississippi Laws, 1976.

able to obtain insurance on a reasonably structured "claims made" basis, rather than being left in the position of being able to obtain insurance only on an "occurrence" basis at what may perhaps be exorbitant rates that few could afford.

We are firmly convinced that the freedom to contract in this manner is not inimical to the public interest.

Plaintiff's motion for summary judgment is well taken.

Let an order issue accordingly.