**NATIONAL AVIATION UNDERWRITERS, Plaintiff/Counterdefendant,**

v.

**Tammie Renee CALDWELL, Executrix of the Estate of John Arthur Cochran, Deceased, Ag–Chem, Inc., a Mississippi Corporation, and Winfred Ewing, Defendants/Counterclaimants.**

**Civ. A. No. DC 86–192–D–D.**

United States District Court,
N.D. Mississippi,
Delta Division.

July 27, 1988.

William H. Cox, Jr., Cox & Dunn, Ltd., Jackson, Miss., and Gerald Jacks, Jacks, Adams & Westerfield, P.A., Cleveland, Miss., for plaintiff/counterdefendant.

Richard T. Phillips, Smith, Phillips & Mitchell, Batesville, Miss., for defendants/counterclaimants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is presently before the court on the parties' cross-motions for summary judgment. Having reviewed the parties' memoranda of authorities and being otherwise fully advised in this matter, the court finds that the plaintiff's motion for summary judgment should be sustained.

### I.

### FACTUAL BACKGROUND

This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201. The plaintiff, National Aviation Underwriters ("National"), is an insurance company organized and existing under the laws of the State of Missouri and having its principal place of business in St. Louis, Missouri. Defendant Tammie Renee Caldwell ("Caldwell") is an adult resident citizen of the State of Mississippi. Defendant Ag–Chem, Inc. ("Ag–Chem") is a corporation organized and existing under the laws of the State of Mississippi and having its principal place of business in Tunica, Mississippi. Defendant Winfred Ewing ("Ewing") is an adult resident citizen of the State of Mississippi.

This action was commenced by National, seeking a judgment declaring that it has no liability on an aviation insurance policy issued to Ag–Chem with respect to an aircraft crash which resulted in the death of John Arthur Cochran ("Cochran") and severe injuries to Ewing. Jurisdiction in this court is predicated upon the diversity of citizenship among the various parties. *See* 28 U.S.C. § 1332.

The parties agree that there is no genuine issue with regard to the background facts in this matter. These facts reveal that National and Cochran, acting as president of Ag–Chem, initially entered into a certain aviation insurance policy on or about March 19, 1985, subject policy providing for coverage on Ag–Chem's Ayres S2R

aircraft, FAA No. N4023P ("the aircraft"). This policy was renewed by National on or about May 21, 1986 and was in full force and effect on June 18, 1986.

The coverage at issue here relates to an accident which occurred on June 18, 1986. At that time, Cochran, Ag–Chem's pilot of the aircraft on the occasion in question, was acting in the course and scope of his duties as president of Ag–Chem when he ordered Ewing to climb into the fuselage of the aircraft behind the pilot's seat. Ewing had arrived late for work and Cochran offered to fly him to the field designated for that day's crop-dusting. No crop-dusting could begin until Ewing, the designated "flagman", was at his proper place in the field.

Ewing climbed into the area behind the pilot's seat and the two men, Cochran and Ewing, took off for the field. The aircraft crashed en route to the field, causing Cochran's death and serious injuries to Ewing.

The policy was issued for the aircraft as a "one-seat" craft, thus Ag–Chem obtained no separate coverage under "Coverage D— Passenger Bodily Injury." At the time of the crash, the aircraft was insured under "Coverage B" of National's policy, providing bodily injury liability coverage in the amount of $100,000 per person and $300,- 000 per occurrence. At the time of the accident, Cochran held a valid Private Pilot Certificate or higher certification. Because there was sufficient room behind the pilot's seat to accommodate another person, Ag– Chem occasionally permitted individuals to ride in the fuselage of the aircraft, as Ewing did on the date of the crash.

Following the crash, Ewing filed a separate lawsuit in the Circuit Court of Tunica County, Mississippi, naming as defendants Caldwell and Ag–Chem. National has not afforded Caldwell and Ag–Chem a defense in the state court action, contending in the present declaratory judgment proceeding that there is no coverage available for Ewing's injuries.

National is seeking a declaration of non-liability from the court. Caldwell, Ag– Chem and Ewing have filed counterclaims seeking a declaration that liability is avail-

able under the language of the policy. The parties have filed cross-motions for summary judgment and all that remains before the court is the single legal issue of coverage *vel non* under the policy.

The following policy language is pertinent to the court's ruling in this matter:

Coverage A—This option is for *bodily injury* and *property damage* liability. *We* will include *bodily injury* liability to passengers only if *you* have purchased that coverage.

Coverage B—This option is for *bodily injury* liability. *We* will include bodily injury to *passengers* only if *you* have purchased that coverage.

Coverage D—This option is for *bodily injury* liability to *passengers* only, and applies only if *you* have purchased this coverage.

COVERAGES B–C–D—MULTI LIMITS

If *you* have purchased these options, the most *we* will pay for all *damages* for:

Coverage B

Any one person who suffers *bodily injury* is the amount listed on "Your Coverage Schedule" as the limit for each person under Coverage B;

Any combination of two or more persons who suffer *bodily injury*, subject to the above limit for any one person, is the amount listed on "Your Coverage Schedule" as the limit for each *occurrence* under Schedule B;

Coverage D

Any one *passenger* who suffers *bodily injury* is the amount listed on "Your Coverage Schedule" as the limit for each *passenger* under coverage D;

If you have not purchased *"Passenger Bodily Injury* Liability," then no part of the "Total Limit" can apply to any claim made due to *bodily injury* to any *passenger.*

WHAT WE DO NOT INSURE UNDER THIS PART

B. *We* do not insure for any obligation for which you or any of your insurers, may be held liable under any worker's compensation ... law.... *We* will not pay for *bodily injury* to any of *your*

employees or officers who are injured in the course of *your* employment or while they were performing duties for *you.*

DEFINITIONS

PASSENGER

means any person, including any crew member, who is in or on the *aircraft* or who is getting into or out of the *aircraft.*

The National policy in effect on June 18, 1986 when Ewing sustained severe injuries provided coverage in the amount of $100,000 per person and $300,000 per occurrence under Multi Limits Coverage B, according to the policy coverage schedule.

## II.

### CONCLUSIONS OF LAW

The primary basis for National's motion for summary judgment is its contention that since the policy in question provides no coverage for passengers and Ewing was a passenger on the date of the crash, there is no coverage for Ewing's accident and resultant injuries. In their cross-motions, defendants Caldwell, Ag–Chem, and Ewing contend that the language of Coverage B does provide coverage for Ewing's injuries and that, if coverage is not available from the clear language of the policy, then any ambiguity in the policy should be construed in favor of coverage for Ewing.

The United States Supreme Court has recently approved of the granting of motions for summary judgment, indicating that summary judgment may be granted and in fact is mandated in the appropriate circumstances to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986). The parties having stipulated to the controlling facts, the court finds that the case *sub judice* is a proper one for resolution on summary judgment. With only one legal issue remaining, there is no genuine factual issue for trial. Fed. R.Civ.P. 56(e).

As this court has ruled on numerous occasions, insurance policies are to be construed in accordance with general princi-

ples of contractual construction. *Western Line Consol. Sch. v. Continental Cas. Co.,* 632 F.Supp. 295, 301 (N.D.Miss.1986). Thus, the court is required to give the terms of a policy their "plain meaning" unless some ambiguity exists. *Aero Intern., Inc. v. U.S. Fire Ins. Co.,* 713 F.2d 1106 (5th Cir.1983); *Hicks v. Quaker Oats Co.,* 662 F.2d 1158 (5th Cir.1981).

It likewise is well settled law in this court that insurance contracts, and each and every provision thereof, are to be construed strongly against the drafter. *Brander v. Nabors,* 443 F.Supp. 764 (N.D.Miss.), *aff'd,* 579 F.2d 888 (5th Cir.1978). In this diversity-based declaratory judgment action, the substantive law of the State of Mississippi controls. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Under Mississippi law, the court must construe any ambiguities in a contract of insurance in favor of the insured and in favor of a finding of indemnity or coverage. *Government Employees Ins. Co. v. Brown,* 446 So.2d 1002 (Miss.1984); *Monarch Ins. Co. of Ohio v. Cook,* 336 So.2d 738 (Miss.1976); *New Orleans Furniture Mfg. Co. v. Great Am. Ins. Co.,* 413 F.2d 1278 (5th Cir.1969); *Patton v. Aetna Ins. Co.,* 595 F.Supp. 533 (N.D.Miss.1984). Likewise, the court must attempt to ascertain and give effect to the mutual intention of the parties. *Rubel v. Rubel,* 221 Miss. 848, 75 So.2d 59 (1954).

Applying these principles to the case *sub judice,* the court must now determine whether there is any coverage available for Ewing under the aviation insurance policy issued by National.

National argues that the language of the policy leads to the conclusion that no coverage is available for the following reasons: 1) Ewing was a passenger in the aircraft when he was injured; 2) the policy does not provide coverage for passengers because Ag–Chem had not purchased any passenger coverage; thus, 3) there was no coverage for Ewing.

The defendants' argument is somewhat more involved. Defendants state that the

policy drafted by National is ambiguous in that it purports to provide coverage in one provision while apparently seeking to deny coverage in another provision. Defendants also argue that National "would not sell" Coverage D, "Passenger Bodily Injury Coverage" for Ag–Chem's one-seat aircraft. National states that it would not sell such coverage only because none was requested by Ag–Chem's president, John Cochran.

Additionally, defendants point out that the policy contains 12 different potential coverages, set forth in the policy as Coverages A through L. As the application and policy indicate, however, Ag–Chem purchased only Coverages B, C, E, K and L from among the 12 possible coverages. Thus, regardless of the explanation for Ag–Chem's decision not to purchase Coverage A or Coverage D, defendants admit that neither Coverage A nor Coverage D was in effect on the date of Ewing's accident.

Defendants argue that the terms of Coverage B are ambiguously written and should be construed against the drafter, National, and in favor of coverage for Ewing. Defendants rely upon the alleged inconsistency between the description of Coverage B under the heading "WHAT WE WILL PAY" in the policy and the description of the amount of coverage available under Coverage B as set forth under the heading "COVERAGES B–C–D—MULTI LIMITS." Under the "WHAT WE WILL PAY" heading, the policy language reads in relevant part: "We will include *bodily injury* liability to *passengers* only if *you* have purchased that coverage." Under the "COVERAGES B–C–D—MULTI LIMITS" heading, the policy language provides in pertinent part:

If *you* have purchased these options, the most *we* will pay for all *damages* for: Coverage B

Any one person who suffers *bodily injury* is the amount listed on "Your Coverage Schedule" as the limit for each person under Coverage B;

Any combination of two or more persons who suffer *bodily injury*, subject to the above limit for any one person,

is the amount listed on "Your Coverage Schedule" as the limit for each occurrence under Coverage B....

The court finds no inconsistency between the "WHAT WE WILL PAY" language of the policy and the "COVERAGES B–C–D MULTI LIMITS" language of the policy. The former language explains how liability arises under the policy, or under what circumstances National will provide coverage under the policy (i.e., what losses National will pay for under the policy). The latter language merely qualifies the "WHAT WE WILL PAY" language by explaining the dollar limits of National's liability under the policy (i.e., the most National will pay under the policy). The court finds no ambiguity between the two sections relied upon by the defendants.

The policy in question here is clear and unambiguous insofar as the question of coverage for passenger bodily injury is concerned. The policy states plainly in describing the coverage provided by Coverage B: "*We* will include *bodily injury* to *passengers* only if *you* have purchased that coverage." For whatever reasons, Ag–Chem had not purchased passenger bodily injury coverage under any of the coverages providing coverage for passenger bodily injury, Coverages A, B and D. This fact is undisputed. Thus, the court finds that passenger bodily injury liability is excluded under the terms of the policy as negotiated between National and Ag–Chem.

There can be little doubt that Ewing was a "passenger" under the terms of the policy at the time of the crash. "Passenger" is defined in the policy as "any person ... who is in or on the *aircraft*...." Insofar as Ewing was unquestionably *in* the aircraft when it crashed, the court concludes that Ewing was a passenger at the time of the crash.

When an insurance policy is unambiguous, there is no need to resort to the presumption of construing a policy against the insurer. *Foreman v. Continental Cas. Co.*, 770 F.2d 487 (5th Cir.1985). The court also should not strain to find ambiguities where none exist even when the result is a harsh consequence to the insured.

*Brander v. Nabors, supra,* 443 F.Supp. at 769. Rather, "insurance contracts, like all other contracts, where clear and unambiguous, must be construed exactly as written." *George v. Mississippi Farm Bureau Mut. Ins. Co.,* 250 Miss. 847, 168 So.2d 530, 531 (1964) (citing *Employers Mut. Cas. Co. v. Nosser,* 250 Miss. 542, 164 So.2d 426 (1964)). The court cannot alter or change the contract terms as written by the parties, despite a resulting hardship on the beneficiary of the policy. *Life & Cas. Ins. Co. of Tenn. v. Harvison,* 187 So.2d 847 (Miss.1966); *Myles v. National Life & Acc. Ins. Co.,* 223 Miss. 181, 77 So.2d 815 (1955).

The court finds that the clear and unambiguous language of the insurance policy in the case at bar provides no coverage to Ewing, who was traveling as a passenger in the aircraft at the time of its crash. Accordingly, National's motion for summary judgment will be sustained.

■ A final point which the parties do not fully address in their memoranda is the language in the policy under the heading "WHAT WE DO NOT INSURE UNDER THIS PART", which reads: "B. *We* will not pay for *bodily injury* to any of *your* employees ... who are injured in the course of *your* employment or while they were performing duties for *you.*" It appears to the court that Ewing would be excluded from coverage based on this language even if he were otherwise entitled to policy benefits under Coverage B.

While the defendants contend that Ewing, who was employed as a flagman, was not acting within the course of his employment at the time of the crash, the court finds that he was acting within the course of his employment and was performing duties for his employer at the time of the crash. In his separate answer, Ewing admits that on the day of the crash he was required to report to work at the Dundee Field, the location from which he and Cochran took off before the crash. In his state court complaint, Ewing avers that he was instructed by Cochran, his supervisor/employer, to enter the aircraft. These acts are sufficient, in the opinion of the court, to support a finding that Ewing was acting within the course of his employment when he entered the aircraft on June 18, 1986.

Under Mississippi law, to establish that an injury arose out of and in the course of employment, it need only be shown that the injury resulted from an activity which was in its overall contours actuated at least in part by the employee's duty to serve his employer or is reasonably incidental to his employment. *Big "2" Engine Rebuilders v. Freeman,* 379 So.2d 888 (Miss.1980). For example, if the work creates a necessity for travel and the employee was injured while so traveling, then the employee was injured in the course of his employment. *Id.* at 890. Likewise, if the employment subjected the employee to a particular risk, e.g., flying in an airplane, and the risk was causally connected to the work, then the injury resulting from the particular risk occurred in the course of the employment. *Stepney v. Ingalls Shipbuilding Division, Litton Systems, Inc.,* 416 So.2d 963, 967 (Miss.1982).

In the case at bar, the court finds that Ewing's injuries—which occurred while he was engaged in an activity at the direction of his employer which was causally connected to his employment—was injured in the course of his employment. Consequently, the court concludes that even if Ewing were entitled to policy benefits under Coverage B as a "person who suffer[ed] bodily injury", liability to Ewing is plainly and unambiguously excluded because his injuries occurred in the course of his employment.

The court concludes that the policy in question provides no coverage to Ewing. National has no duty, therefore, to defend the action against Caldwell and Ag–Chem which Ewing has filed in state court. As indicated *supra,* the court holds that National's motion for summary judgment should be sustained.

A separate order will be entered.